IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ITT MANUFACTURING ENTERPRISES, INC., (a Delaware corporation ),

Plaintiff,

v.

CELLCO PARTNERSHIP (d/b/a Verizon Wireless), LG ELECTRONICS, INC., LG ELECTRONICS U.S.A., INC., and LG MOBILECOMM U.S.A., INC., MOTOROLA, INC., KYOCERA CORPORATION, KYOCERA INTERNATIONAL, INC., KYOCERA WIRELESS CORP., and KYOCERA SANYO TELECOM, INC., QUALCOMM INC., NOKIA CORPORATION, AND NOKIA, INC.,

Defendants.

C.A. No. 09-190-JJF

**JURY TRIAL DEMANDED**

**MEMORANDUM IN SUPPORT OF LGE AND KYOCERA'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS ON COUNTS 30, 32, AND 33 OF ITT'S COMPLAINT**

CONNOLLY BOVE LODGE & HUTZ LLP

Paul E. Crawford (No. 0493)
The Nemours Building
1007 N. Orange St.
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
pcrawford@cblh.com

*Attorneys for LGE and Kyocera*

OF COUNSEL:

Jeffrey K. Sherwood
Frank C. Cimino, Jr.
DeAnna D. Allen
Robert L. Kinder
Matthew B. Weinstein
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
Telephone: (202) 420-2200

Dated: December 22, 2009

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. STATEMENT OF THE FACTS ..... 3

III. ARGUMENT ..... 4

A. Sprint Network Phones Are Authorized And Can Neither Directly Nor Indirectly Infringe The '450 Patent ..... 5

1. LGE And Kyocera's Sprint Network Phones Cannot Infringe Because ITT Has Authorized the Accused Activity ..... 5

2. Because There Is No Direct Infringement by the Sprint Network Phones, There Is Also No Indirect Infringement ..... 6

B. Because LGE and Kyocera Do Not Provide The Required Network Element Neither Can Directly Infringe The '450 Patent ..... 7

IV. CONCLUSION ..... 7

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Applera Corp. v. Illumina, Inc.*,
282 F. Supp. 2d 1120 (N.D. Cal. 2003) ........ 2

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
365 U.S. 336 (1961) ........ 5

*Boynton v. Headwaters, Inc.*,
243 Fed. Appx. 610 (Fed. Cir. Jul. 27, 2007) ........ 6

*In re U.S. West, Inc. Secs. Litig.*,
201 F. Supp. 2d 302 (D. Del. 2002) ........ 1

*ITT Manufacturing Enterprises, Inc. v. Samsung Telecommunications America, LP, et al.*,
Civil Action No. 03-CV-1086-GMS (D. Del.) ("*Sprint Litigation*") ........ 4

*Jim Arnold Corp. v. Hydrotech Sys.*,
109 F.3d 1567 (Fed. Cir. 1997) ........ 2

*Joy Tech. v. Flakt, Inc.*,
6 F.3d 770 (Fed. Cir. 1993) ........ 6

*Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*,
803 F.2d 684 (Fed. Cir. 1986) ........ 6

*MuniAuction, Inc. v. Thomson Corp.*,
532 F.3d 1318 (Fed. Cir. 2008) ........ 7

*Pfizer Inc. v. Ranbaxy Labs. Ltd.*,
321 F. Supp. 2d 612 (D. Del. 2004) ........ 4

*TransCore, LP v. Elec. Trans. Consultants Corp.*,
563 F.3d 1271 (Fed. Cir. 2009) ........ 5

*Quanta Comp. Inc., v. LG Elecs., Inc.*,
553 U.S. __, 128 S.Ct. 2109 (2008) ........ 6

Statutes

35 U.S.C. § 252 ........ 3

35 U.S.C. § 271 ........ 3, 5

35 U.S.C. § 307(b) ........ 3

Rules

FED. R. CIV. PROC. 12(c) ........ 3, 4

## I. INTRODUCTION

The pleadings show the following to be true and indisputable:[1]

- Every patent claim in the '450 patent requires a non-handset element by which a mobile handset (or "mobile phone") accesses data, in other words, a cellular network.[2]
- ITT pleads that operation of mobile phones in a network is required before LGE's or Kyocera's phones can infringe the patent in suit. (Compl., D.I. 1, ¶30).
- Consistent with the patent claims, ITT also pleads that the "network" is the accused component by which satellite data is "received, stored and transmitted" to the phones. (D.I. 1, ¶23).
- There is no allegation, however, that either LGE or Kyocera operate the accused network component or otherwise provide anything beyond the handset portion of the accused system. (D.I. 1, ¶30).
- In 2003, Plaintiff ITT Manufacturing Enterprises, Inc. ("ITT") sued Sprint, a cellular network, for alleged infringement of the '450 patent.
- ITT settled that prior case and covenanted not to sue Sprint for any alleged infringement of the '450 patent relating to use or sale of phones on that network. (ITT's Counterclaim Answers, D.I. 108, p.6, D.I. 109, p.6, responses to ¶¶ 83-86).

---

1 Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendants and Counterclaimants Kyocera Corporation, Kyocera International, Inc., Kyocera Wireless Corp., and Kyocera Communications, Inc. (collectively, "Kyocera"), and LG Electronics, Inc., LG Electronic U.S.A., Inc., and LG Electronics MobileComm U.S.A., Inc. (collectively "LGE"), move for partial judgment on the pleadings.

2 The attached Appendix A shows the network element present in every independent claim. Any argument by ITT that claim construction is required must fail. As explained in more detail below, even if ITT disputes that a network is required—which refutes ITT's own theory of the case—it is plain that every claim of the '450 patent affirmatively requires at least one *non-handset* element, in other words, something in addition to what ITT alleges is made, used, sold or offered for sale by Defendant *handset makers* LGE and Kyocera.

LGE and Kyocera believe the Court may decide this motion solely by referring to the pleadings, but further note that ITT attached the original and reexamined '450 patents to the Complaint (*see* Compl. Exhs. A and B); therefore reference also may be made to these exhibits as part of this 12(c) motion. *See In re U.S. West, Inc. Secs. Litig.*, 201 F. Supp. 2d 302, 304-05 (D. Del. 2002) (citations omitted) (Court may consider documents integral to the pleadings as part of a 12(c) motion).

- Sprint is therefore authorized and licensed under the '450 patent for those purposes.
- ITT now accuses the defendants' phones that are sold to Sprint for use on the Sprint network ("Sprint Network Phones") of infringing the '450 patent, but only when those phones are operated on the Sprint network. (D.I. 1, ¶30).
- Because the Sprint network is authorized and sales by Sprint to its customers of the Sprint Network Phones are authorized under the '450 patent, the Sprint Network Phones cannot infringe the claims of the'450 patent, directly or indirectly. (D.I. 108, p.6, D.I. 109, p.6, responses to ¶¶ 83-86).
- And, because every claim contains a network limitation and neither LGE nor Kyocera operate (or are alleged to operate) a network, they cannot be direct infringers.

LGE and Kyocera seek the following relief for the counts pled at paragraphs 30, 32, and 33 of the Complaint: (1) judgment on ITT's allegations of both direct and indirect infringement based on LGE and Kyocera's making, marketing, importing, using or selling Sprint Network Phones; and (2) judgment on all other allegations of direct infringement made against LGE and Kyocera in this case.[3]

This motion is timely because it will simplify and narrow discovery and will result in the dismissal of one party, Kyocera Corporation, whose only sales are to Sprint. *See Applera Corp. v. Illumina, Inc.*, 282 F. Supp. 2d 1120, 1131 (N.D. Cal. 2003) (*citing Jim Arnold Corp. v. Hydrotech Sys.*, 109 F.3d 1567, 1577 (Fed. Cir. 1997) (a district court should "decide whether a license defense precludes an infringement claim before starting down the long road of patent infringement litigation")).

---

3 While LGE and Kyocera each deny all of ITT's infringement allegations, this motion is limited to the following two grounds: (1) direct infringement claims and indirect infringement claims based on LGE and Kyocera mobile telephones sold to Sprint, or operated in Sprint's network, and (2) all direct infringement claims made against LGE and Kyocera regardless of the accused network provider (e.g., regardless whether ITT accuses operation of the phones in the Sprint network or the Verizon network). This motion is not directed to ITT's other allegations including, for example, to indirect infringement where Verizon is the provider at issue.

## II. STATEMENT OF THE FACTS[4]

ITT alleges that both LGE and Kyocera infringe the '450 patent[5] pursuant to 35 U.S.C. § 271, "by using, selling and/or offering to sell, within the United States, and/or importing into the United States mobile telephones **adapted to operate in** an assisted AGPS mobile communications network, which, **when operated in such a network**, embody and/or practice the claimed inventions. . . ." (D.I. 1, ¶ 30) (emphases added). ITT also alleges that LGE and Kyocera induce infringement of the '450 patent "by taking active steps to encourage and facilitate others' direct infringement" by "marketing and selling AGPS enabled phones, **which in combination with an AGPS network system**, such as that operated by Verizon Wireless, infringe the claims of the '450 patent. . . ." (D.I. 1, ¶ 32) (emphasis added).

ITT's pleadings reveal that at least one non-handset element is required. (D.I. 1, ¶¶ 23, 30). Specifically, each of ITT's allegations and each claim in the '450 patent require a functioning AGPS mobile communications network.[6] ITT does not allege that LGE or Kyocera

---

4 For purposes of this motion pursuant to FED. R. CIV. PROC. 12(c), those facts alleged in the Complaint must be presumed true. By treating such facts as true for purposes of this motion, LGE and Kyocera do not admit or otherwise accept that any such facts are indeed true. Specifically, in bringing this motion, LGE and Kyocera do not admit or otherwise accept that any of ITT's allegations regarding infringement (*i.e.* that infringement occurs when phones are used on a network) are true.

5 United States Patent No. 5,365,450, and Ex Parte Reexamination Certificate Number US 5,365,450 C1 ("the '450 patent") entitled "Hybrid GPS/Data Line Unit for Rapid, Precise, and Robust Position Determination." Compl., D.I. 1, ¶ 29, Exs. A & B. On February 3, 2009, Ex Parte Reexamination Certificate Number US 5,365,450 C1 was issued. Compl., D.I. 1, ¶ 29, Ex. B. By operation of law, the originally issued patent was surrendered upon the issuance of the reexamination certificate. *See* 35 U.S.C. §§ 307(b) and 252 ("The surrender of the original patent shall take effect upon the issue of the reissued patent. . . ."). ITT asserts that it is the owner by assignment of the '450 patent. Compl., D.I. 1, ¶ 29.

6 "ITT admits that in its complaint it accuses LG of infringement of the '450 patent and that **infringement occurs <u>when</u> [Defendants'] mobile telephones operate in an assisted AGPS mobile communications network**. . . ." D.I. 108, p.6, D.I. 109, p.6, responses to ¶ 85 (emphasis added). This is true because each independent claim of the '450 patent requires such a network. Elsewhere in its pleading, ITT denies that every claim contains a network limitation. This denial is refuted by its allegation that the phones *only* infringe when used in a network, and by the plain language of the patent, which ITT attached to its complaint. *See* Appendix A.

operate any such network. As ITT pleads, LGE and Kyocera only make, market, and sell mobile telephones for use on the accused AGPS networks. (D.I. 1, ¶¶ 5, 6, 7, 9-12) ("manufactures" and "markets mobile telephones throughout the world" or cooperate "in selling and marketing mobile telephones").

The only network provider named in this action is Verizon. (D.I. 1, ¶ 4). Although Sprint is also a network provider, ITT does not and cannot name Sprint as a defendant here because, ITT settled all claims arising under the '450 patent against Sprint in 2005 and covenanted not to sue Sprint for infringement of the '450 patent.[7] *See ITT Mfg. Enter., Inc. v. Samsung Telecomm. Am., LP, et al.*, Civil Action No. 03-CV-1086-GMS (D. Del.).

## III. ARGUMENT

Federal Rule of Civil Procedure 12(c) requires that "a court must accept as true the factual allegations of the complaint and draw all reasonable factual inferences in the light most favorable to the non-moving party," *Pfizer Inc. v. Ranbaxy Labs. Ltd.*, 321 F. Supp. 2d 612, 614-15 (D. Del. 2004) (citing FED. R. CIV. PROC. 12(c)). A court, however, "is 'not required to accept legal conclusions either alleged or inferred from the pleaded facts.'" *Id.* at 615. Here, the undisputed facts have clear legal consequences, as explained below.

[7] In view of these undisputed facts, LGE and Kyocera asserted affirmative defenses and counterclaims of license for the Sprint Network Phones. (Kyocera and LGE's Answers and Counterclaims, D.I. 92, D.I. 93). In response to these counterclaims, "ITT admits that the Sprint Agreement prevents ITT from bringing a claim of patent infringement under the '450 patent against Sprint for the use or sale of mobile telephone products. . . ." (D.I. 108, p.6, D.I. 109, p.6, responses to ¶ 83) "ITT admits that the Sprint Agreement prevents ITT from bringing a claim of patent infringement against Sprint based upon its use or sale of AGPS mobile telephone. . . ." (D.I. 108, p.7, D.I. 109, p.6, responses to ¶ 86).

### A. Sprint Network Phones Are Authorized And Can Neither Directly Nor Indirectly Infringe The '450 Patent

#### 1. LGE And Kyocera's Sprint Network Phones Cannot Infringe Because ITT Has Authorized the Accused Activity

According to ITT's Complaint, direct infringement does not arise until all the accused elements are combined – *i.e.*, when a mobile telephone is put into operation in an AGPS mobile communications (*e.g.*, the Sprint) network: in other words, "infringement [only] occurs when [Defendants'] mobile telephones operate in an assisted AGPS mobile communications network." (D.I. 108, p.6, D.I. 109, p.6, responses to ¶ 85; D.I. 1, ¶¶ 30, 32); *see also Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 344 (1961) ("if anything is settled in the patent law, it is that the combination patent covers only the totality of the elements in the claim and that no element, separately viewed, is within the grant"). This combination is required by each one of the reexamined '450 patent claims. Because ITT has already authorized Sprint's use of the network for every patent claim, no such claim can be infringed when the Sprint Network Phones are operated or used on the Sprint network. (D.I. 108, p.6, D.I. 109, p.6, responses to ¶¶ 83-86). ITT admits it cannot sue Sprint for infringement of the '450 patent based on use or sale of mobile telephone products. *Id.* Such operation occurs with ITT's authority and therefore falls outside of the Patent Act. *See* 35 U.S.C. § 271(a) ("whoever **without authority** makes, **uses**, offers to sell, or sells any patented invention . . . infringes the patent") (emphases added).

ITT may counter that the Sprint Network Phones are not authorized under the '450 Patent because the Sprint Agreement is a covenant not to sue, as distinguished from a license. Any such argument is manifestly wrong: "a patent license agreement is in essence nothing more than a promise by the licensor not to sue the licensee." *TransCore, LP v. Elec. Trans. Consultants Corp.*, 563 F.3d 1271, 1274 (Fed. Cir. 2009) (internal quotations omitted).

> The real question, then, is not whether an agreement is framed in terms of a "covenant not to sue" or a "license." That difference is only one of form, not substance – both are properly viewed as "authorizations." Rather, the pertinent question here is not whether but what the [ ] settlement agreement authorizes.

*Id.* at 1276. Here, as ITT readily admits, in the Sprint Agreement ITT promises never to sue Sprint under the '450 patent for use of phones on its network, thereby authorizing Sprint to operate the Sprint Network Phones on its network. (D.I. 108, p.6, D.I. 109, p.6, responses to ¶¶ 83-86). This authorization, along with ITT's admission that infringement only occurs when the combined system is operational, make it impossible for there to be any direct infringement with respect to the Sprint network. Even where Sprint customers acquire phones (merely standard parts in a cellular network) from third-parties, ITT's rights are exhausted, because, as made clear from ITT's pleading, the phones do not infringe until operated on a network, and here the subsequent use of the phones is on the Sprint Network, which is authorized. *See, e.g.*, *Quanta Comp. Inc., v. LG Elecs., Inc.*, 553 U.S. __, 128 S.Ct. 2109, 2119-21 (2008).

2. Because There Is No Direct Infringement by the Sprint Network Phones, There Is Also No Indirect Infringement

Where a particular party has a license "to practice the inventions claimed" in the patent-in-suit, as here, "there can be no direct infringement." *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986). And it is well-settled that if there is no direct infringement, then there can be no indirect infringement. *Joy Tech. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993). Sprint is authorized to perform the activities alleged to directly infringe the '450 patent, and thus Sprint and its suppliers (such as Kyocera and LGE) do not directly infringe. *See Met-Coil*, 803 F.2d at 687 ("[a]bsent direct infringement of the patent claims, there can be neither contributory infringement, nor inducement of infringement."). Therefore, Kyocera and LGE also cannot indirectly infringe. *See Boynton v. Headwaters, Inc.*, 243 Fed. Appx. 610, 614 (Fed. Cir. Jul. 27, 2007) (unpublished) ("[w]e agree . . . that [Defendant] cannot be a direct infringer as a licensee, and . . . therefore cannot be liable for inducement of infringement."). Accordingly, ITT's counts for indirect infringement, ¶¶ 32 (inducement) and 33 (contributory), must fail for Sprint Network Phones.

### B. Because LGE and Kyocera Do Not Provide The Required Network Element Neither Can Directly Infringe The '450 Patent

Direct infringement requires that the accused party practice (or direct and control the practice of) each element of the asserted patent claim. *MuniAuction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008). ITT's direct infringement allegations against LGE and Kyocera fail to meet this fundamental requirement.

This is true because the Complaint makes clear that a network is a required element of ITT's infringement allegations. Specifically, ITT pleads that infringement occurs when a mobile phone is "operated in such a network. . . ." (D.I. 1, ¶ 30 (emphases added)) and consistent with the patent claims, ITT also pleads that the "network" is the accused component by which satellite data is "received, stored and transmitted" to the phones.[8] (D.I. 1, ¶ 23). Although ITT alleges that LGE and Kyocera each provide mobile telephones, ITT *never* alleges that either LGE or Kyocera provide or otherwise practice (or direct or control the practicing of) the required network element. Therefore, this Court should enter partial judgment on the pleadings that there is no direct infringement of the '450 patent by either LGE or Kyocera.

## IV. CONCLUSION

This Court should grant Defendants' motion for partial judgment of (1) non-infringement for all Defendants' mobile telephone products sold to Sprint or operated in the Sprint network; and (2) non-infringement for all allegations of direct infringement directed against LGE and Kyocera.

---

[8] As shown in the attached Appendix A, a cursory review of the independent claims of the '450 patent reexamination certificate reveals why ITT's pleadings are so limited – each independent claim expressly requires an earth-based source or "network" element. (D.I. 1, Exh. B, cols. 1-5). Any attempt by ITT to deny this flies in the face of how it has pled in this case—where it has affirmatively stated that "infringement [only] occurs when [Defendants'] mobile telephones operate in an assisted AGPS mobile communications network." (D.I. 108, p.6, response to ¶ 85).

CONNOLLY BOVE LODGE & HUTZ LLP

OF COUNSEL:

Jeffrey K. Sherwood
Frank C. Cimino, Jr.
DeAnna D. Allen
Robert L. Kinder
Matthew B. Weinstein
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
Telephone: (202) 420-2200

/s/ Paul E. Crawford

Paul E. Crawford (No. 0493)
The Nemours Building
1007 N. Orange St.
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
pcrawford@cblh.com

*Attorneys for LGE and Kyocera*

Dated: December 22, 2009
743528

**APPENDIX A**

*Network (non-handset) limitations are present in every independent claim*

| *Claim No.* | *"Network" limitation* |
| --- | --- |
| 1 | an **earth based source of satellite position data** for all in-view GPS satellites including said Satellite Data Message block for each in-view satellite for assisting one of said mobile radio stations to access position information from said earth orbiting GPS satellites, wherein said earth based source of satellite position data receives and stores the satellite position data, including the satellite data message block, from each of the in-view GPS satellites, and an earth based communication means coupled to said earth based source of satellite position data |
| 3 | an **earth based source of satellite position data** for all in-view GPS satellites including said Satellite Data Message block for each in-view satellite for assisting one of said mobile radio stations to access position information from said earth orbiting GPS satellites, and an earth based communication means coupled to said earth based source of satellite position data, |
| 4 | an **earth based source of satellite position data** for all in-view GPS satellites including said Satellite Data Message block for each in-view satellite for assisting one of said mobile radio stations to access position information from said earth orbiting GPS satellites, and an earth based communication means coupled to said earth based source of satellite position data, |
| 5 | an **earth-based source of the satellite data** message blocks containing the ephemeris and time models of in-view GPS satellites, which earth-based source is independent of said GPS satellites, an independent wireless data channel for accessing said satellite data message block, and a controller means connecting said satellite data message block to said mobile GPS receiver, wherein said mobile GPS receiver acquires the in-view GPS satellites using the ephemeris and time models of the in-view GPS satellites received from the earth-based course. |
| 9 | **providing data from** the Satellite Data Messages transmitted by the in-view GPS satellites to the receiver via **a non-GPS earth based source**, |
| 10 | **supplying assisting data** transmitted by in-view GPS satellites **via the independent source** to assist the GPS receiver in acquiring the GPS satellite signals. |

| | |
|---|---|
| 11 | **supplying assisting data** transmitted by the in-view GPS satellites **via an earth-based source** to assist the GPS receiver in acquiring GPS satellite signals; and |
| 17 | an **earth based source of satellite position data** for all in-view GPS satellites including said Satellite Data Message block for each in-view satellite for assisting one of said mobile radio stations to access position information from said earth orbiting GPS satellites, and an earth based communication means coupled to said earth based source of satellite position data, |
| 24 | an **earth-based source of the satellite data message blocks** containing the ephemeris and time models of in-view GPS satellites, which earth-based source is independent of said GPS satellites, an independent wireless data channel for accessing said satellite data message block, and a controller means connecting said satellite data message block to said mobile GPS receiver, |

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on December 22, 2009, a copy of the foregoing MEMORANDUM IN SUPPORT OF LGE AND KYOCERA'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS ON COUNTS 30, 32, AND 33 OF ITT'S COMPLAINT was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to counsel of record.

/s/ Paul E. Crawford
Paul E. Crawford (No. 0493)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange St.
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
pcrawford@cblh.com

*Attorneys for LGE and Kyocera*