

Potter
Anderson
&Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

January 21, 2011

**VIA ELECTRONIC FILING**

The Honorable Leonard P. Stark
United States District Court
844 N. King Street
Wilmington, DE 19801

    Re:    *ITT Manufacturing Enterprises, Inc., v. Cellco Partnership, et al.*
            **C.A. No. 09-190-LPS**

Dear Judge Stark:

    Pursuant to the Court's December 27, 2010 Scheduling Order, defendants respectfully submit the following objections to plaintiff's January 14, 2011 Technology Tutorial ("Tutorial") concerning U.S. Patent No. 5,365,450 C1 ("the '450 Patent").[1]

    As an initial matter, defendants disagree with plaintiff's assertion that the '450 Patent "advanced the field of GPS technology in two fundamental ways" (*e.g.*, Tutorial 25:39–25:56) and its selective reference to certain "prior art" to suggest that the '450 Patent is an advancement over *all* "prior art" (*e.g., id.* 25:29–35) and "conventional GPS receivers" (*e.g., id.* 20:15–26) of the time. Although that issue is not currently before this Court, defendants note that they will establish to the contrary. For example, defendants will show that pre-existing art described the transmission of satellite data from an earth-based source to a receiver for the purposes of position determination. In addition, defendants object to the following specific aspects of plaintiff's Tutorial, which fall into three general categories: 1) assumptions regarding disputed terms; 2) inaccuracies regarding the technology and 3) inaccuracies regarding the Patent:

    I.    Assumptions Regarding Disputed Terms

    Defendants object to the Tutorial's description of "ephemeris and clock model parameters" as necessarily "consist[ing] of 420 bits of data", of which "62 bits comprise the satellite clock", and the chart that illustrates this claim. (*Id.* 3:03–3:15.) The parties dispute the proper characterization of these parameters. Furthermore, defendants are not aware of any

---

[1] These objections are not intended to be an exhaustive list of every error or omission in the Tutorial. Defendants reserve the right to dispute any fact or opinion expressed in the Tutorial at trial.

source in the art, including in the '450 Patent itself, that defines these parameters as "consist[ing] of 420 bits of data". *Id.* Likewise, defendants object to the Tutorial's characterization of those 420 bits as "the payload of the first three subframes". (*Id.* 3:40–3:45.) Defendants are not aware of any source in the art, including the '450 Patent itself, that defines "payload" or the "ephemeris and clock model" as a 420-bit "payload". Indeed, the only reference to a 420-bit "payload" of which defendants are aware is in ITT's *Markman* papers. (*See, e.g.,* ITT Answering Br. 7 & n.1; Tab U.)

Defendants object to the Tutorial to the extent it suggests that initial frequency uncertainty is always 3500 Hz and frequency cells are always 500 Hz in width.[2] (Tutorial 23:00–23:18.) Those are disputed concepts, and defendants contend that the initial uncertainty and frequency search cell widths can vary. For example, in the Taylor patent, cited by the '450 Patent, a width of 200 Hz is used for frequency search cells. (*See* Ex. 19 to Defs. Opening Br. [U.S. Patent No. 4,445,118] col.6 ll.43–44.) Furthermore, defendants object to the Tutorial's description of the '450 Patent as reducing the "uncertainty for subsequent satellites" to "the order of only a few hundred hertz", rather than to a single frequency search cell. (Tutorial 23:49–24:11 (stating that it is a mere "consequence" that each subsequent satellite needs "only a single frequency search cell").) To the contrary, as the '450 Patent makes clear, the use of a "single frequency search cell per in-view satellite" is the defining characteristic of the "further parallel search" discussed in the '450 Patent, and the frequency uncertainty of "a few hundred hertz" for subsequent searches, contrary to plaintiff's assertion, is merely exemplary. ('450 Patent col.9 ll.16–18; col.10 ll.15–16.)

Defendants object to the Tutorial's tactical and rather strained reference to "a ruler calibrated only in 16ths of an inch". (Tutorial 15:05–15:11.) "Calibrating"—in a rather different context—is a disputed claim term. Plaintiff's reference attempts to distract from the fact that "calibrating" generally—and as used in the patent—includes "adjusting" to a known scale. This issue is covered in the briefs.

II. Inaccuracies Regarding the Technology

Defendants object to the Tutorial as inaccurate to the extent it implies that Doppler shift is the only or primary reason a GPS receiver "must search a wide frequency range to find the signal". (*Id.* 8:36–8:48.) Uncertainty as to the Doppler shift of a satellite is a factor in frequency uncertainty; however, even according to the '450 Patent, it is "the receiver's oscillator offset"—and not the Doppler shift—that is the "dominant factor" in frequency uncertainty. ('450 Patent col.4 ll.47–50.) In fact, the '450 Patent states that oscillator accuracy alone accounts for "±1580 Hz" of "roughly ±1700 Hz" of frequency uncertainty.[3] (*Id.* col.5 ll.3–8.) Thus, the Tutorial is incomplete and misleading insofar as it ignores oscillator bias as the "dominant factor" in frequency uncertainty.

---

[2] The values of 3500 Hz and 500 Hz from the Patent are merely exemplary. (*See also* '450 Patent col.5 ll.16–17.)

[3] Uncertainty in the GPS satellite's Doppler offset accounts for "about 60 Hz" of frequency uncertainty, while uncertainty in the user's Doppler offset accounts for "an additional 76 Hz of frequency uncertainty". ('450 Patent col.4 ll.63–67.)

Defendants object to the Tutorial's claim that, "with the calculated time of flight and the satellite ephemeris, the GPS receiver can calculate its own position". (Tutorial 25:20-25:27.) That statement is not technically accurate. Knowledge of the satellite's location at the time of signal transmission is also required to compute a GPS solution, and the ephemeris alone does not provide that information. Specifically, the receiver must also know the exact GPS time of the transmission. Thus, even if a GPS receiver uses rough knowledge of its position to "reduce uncertainty in the measured time of flight" (*id.* 25:15–25:20), the problem of determining satellite position remains. The Tutorial, however, omits any discussion of this issue or the '450 Patent's purported solution to this problem, which is discussed at Col.5 l.58–Col.6 l.16 of the Patent, and in Figure 3 of the Patent.

To avoid confusion, Defendants must object to the Tutorial's statement that, "by comparing the time of arrival to the time of transmission and dividing it by the speed of light, it is possible to determine range to each satellite". (Tutorial 16:47–16:56.) That statement is not accurate because range to the satellites is determined by the basic equation of speed × time = distance (or range). In this case, range would be calculated by taking the difference in time of arrival and time of transmission (time) and *multiplying*—not dividing—it by the speed of light (speed). However, Defendants believe this to be a simple mistake rather than any attempt at "spin".

III.    Inaccuracies Regarding the '450 Patent

Defendants object to ITT's depiction of an actual cellular telephone as representing "the patented technology" (*id.* 25:29–35) or ITT's "invention" (*id.* 21:31–40). The inventors of the '450 Patent never built a cellular telephone as an embodiment of the purported invention—indeed, they built no embodiment of any kind. Defendants also object to the depiction to the extent that it implies that the '450 Patent covers any of defendants' products.

Defendants object to the Tutorial's statement describing the '450 Patent as a system in which "satellite signals are continuously received and decoded at a remote location" (*Id.* 21:40–21:45) because the '450 Patent does not contain any discussion of a "remote location" or any other location other than a mobile GPS receiver where satellite signals are "received and decoded".

Defendants object to the Tutorial's statement that, "because the receiver has obtained the needed ephemeris data ..., it can quickly determine which satellite will be most directly overhead". (*Id.* 22:42–22:52.) There is no discussion in the '450 Patent of using ephemeris to determine "which satellite is most directly overhead". Rather, according to the '450 Patent, the GPS receiver is discussed as "employing a GPS satellite *almanac* ... to estimate which GPS satellite is most directly overhead". ('450 Patent col.4 ll.52–56 (emphasis added).)

Respectfully,

*/s/ Richard L. Horwitz*

Richard L. Horwitz

The Honorable Leonard P. Stark
January 21, 2011
Page 4

RLH/msb
998036 / 34172

Enclosure
cc:    Clerk of the Court (via hand delivery)
       Counsel of Record (via electronic mail)