# DAVIDSON BERQUIST JACKSON & GOWDEY, LLP

4300 WILSON BLVD., SUITE 700
ARLINGTON, VIRGINIA 22203

January 21, 2011

The Honorable Leonard P. Stark
United States District Court for the District of Delaware
844 King Street, Room 4209
Wilmington, DE 19801

      Re: **ITT Manufacturing Enterprises, Inc. v. Cellco Partnership, et al.**
           **U.S.D.C., D. Del., Civil Action No. 09-190-LPS**

Dear Judge Stark:

      Plaintiff ITT submits this letter pursuant to this Court's Scheduling Order of December 27, 2010, to object to the tutorial submitted by the defendants in this action. The objections below are not intended to be exhaustive list of every error, omission or mischaracterization in the Tutorial and Plaintiff reserves its right to object and dispute any fact or opinion at trial and/or otherwise.

    A. <u>The Defendants Mischaracterize Key Aspects of the '450 Patent</u>

      At slide 66, approximately 20 minutes and 57 seconds into the video, the defendants wrongly advise the Court that the '450 patent does not claim any innovation relating to measuring the time of flight of one GPS satellite signal or resolving any ambiguity as to that time of flight. That representation is incorrect. Column 5, lines 45-48 of the '450 patent address the resolution of the "time-position ambiguity" in the pseudorange measurements (*i.e.*, the "time of flight" of the satellite signals to the receiver). The '450 patent expressly states that by knowing "prior position knowledge" of the GPS receiver (illustrated in Figure 3 by the position cylinder), the "time-position ambiguity of the GPS receiver (*i.e.*, the ambiguity in the pseudorange measurements or "time of flight") is resolved. Column 5, line 67- column 6, line 2. Moreover, that aspect of the invention is expressly claimed in claim 34 ("wherein the ambiguity is a pseudo-range ambiguity") and claim 35 ("resolving the ambiguity substantially eliminates ambiguity in an apparent time of flight of the GPS satellite signals").

      This issue is at the heart of the claim construction dispute relating to the claim phrase "resolve ambiguity in a time position of a GPS solution." The defendants' suggestion that the '450 patent does not address the resolution of the ambiguity of a single satellite's time or flight, or pseudo-range, is inaccurate and argumentative.

    B. <u>The Defendants Mischaracterize Key Aspects of GPS Phraseology</u>

      At slides 54-55, approximately 16 minutes and 25 seconds into the video, the defendants display 5 boxes representing the five subframes of a satellite broadcast message. It is undisputed that the first subframe includes the four clock model parameters (totaling 62 bits of the 300 bits)

and that subframes 2 and 3 contain the sixteen ephemeris parameters (totaling 358 bits of the 600 bits), but it is inaccurate and argumentative to label the first box "clock model" and the second and third boxes "ephemeris." Defendants' tutorial incorrectly suggests that _all_ 600 bits of subframes 2 and 3 and _all_ 300 bits of subframe 1 constitute the ephemeris and clock model information. That inaccuracy is compounded by the fact that the Defendants' tutorial fails to disclose or describe the specific contents of these three subframes other than to acknowledge that "other," unspecified data is contained within those three subframes at slide 57.

This issue is at the heart of the parties' disputes as to what a "Satellite Data Message block" is, what satellite data must be provided to the phone as part of the claimed "data from the Satellite Data Messages," the claimed "assisting data," the claimed "satellite position data," and the claimed "earth-based source of the satellite data message blocks containing the ephemeris and time models." The defendants' inaccurate description of the content of the first three subframes favors their proposed claim construction in direct contradiction of the '450 patent's instruction that only "the current ephemeris and time models" (420 bits) are sent to the phone. See '450 Patent, Col. 7, lines 12-16; _see also_ claims 12 and 15.

C.  The Defendants' Tutorial Wrongly Suggests That The Disputed "Satellite Data Message block" Is The First Three Subframes Of The Satellite Message

The defendants conclude this section of their tutorial by advising the Court that the three subframes they mischaracterize as "clock model" and "ephemeris" blocks, are the satellite data message block. _See_ slides 59-61. That representation is a claim construction argument and has no place in a technology tutorial. Like the arguments found in the defendants' _Markman_ briefing, the defendants cite select portions of the '450 patent as support for that conclusion (in particular language from the bottom of Column 2 of that patent), but that does not change the fact that it is a proposed construction for a disputed claim term.

Critically, this misrepresentation, along with the defendants mischaracterization of the first three subframes as the satellite data message block, causes the defendants to erroneously conclude that the innovation of the '450 patent is the provision of the entire Satellite Data Message over the wireless network. _See_ defendants' slide 61. But that is only one of the embodiments described in the '450 patent, and it is not even the preferred embodiment. Thus, the defendants are inaccurate in how they describe the innovations of the '450 patent.

The defendants' tutorial confuses the issue with misdirection. To make the inclusion of all 900 bits appear reasonable, the defendants assert that the parties agree that the Satellite Data Message includes 900 bits. _See_ defendants' tutorial at approximately 19 minutes and 33 seconds. But that is misdirection. Everyone agrees that the first 3 subframes of a satellite broadcast message include 900 bits (300 bits in each subframe). Everyone also agrees that the four time model parameters for a satellite are found in the first subframe and the sixteen ephemeris parameters for a satellite are found in subframes 2 and 3 of that satellite's broadcast message. Similarly, everyone agrees that the prior art GPS receivers described at the bottom of Column 2 of the '450 patent were required to read the entire first three subframes (900 bit block) of satellite data message in order to obtain the needed ephemeris and clock model information. But none of that supports finding that the claimed Satellite Data Message block of claim 1 is the 900 bits of

the first three subframes, and none of that makes it appropriate to include argument as to the meaning of a contested claim terms in the defendants' technology tutorial. A central aspect of the '450 patent is the elimination of the need to read the entire 900-bit satellite broadcast message.

### D. The Defendants Mischaracterize The Method By Which Subsequent Parallel Satellite Searches Can Be Narrowed

At slides 27-29, approximately 11 minutes and 1 second into their tutorial, the defendants advise the Court that the '450 patent teaches that the search for additional satellites can be narrowed by accounting for local oscillator bias. That representation is true, but it is only part of the story. The '450 patent *also* describes using the Doppler measurement of the first satellite acquisition "to collapse the frequency uncertainty in acquisition of satellite signals by calibrating the GPS local oscillator against the Doppler measure." Col. 5, lines 26-29. Thus, the defendants' tutorial is inaccurate to the extent that it wrongly limits this calibration to accounting only for local oscillator bias.

Similarly, to the extent that the defendants' tutorial purports to link local oscillator bias to variations of oscillator temperature, *see, e.g.*, slides 18-19, ITT notes that the '450 Patent never mentions the temperature of the local oscillator. ITT understands that oscillator temperate may contribute to oscillator bias, but oscillator bias is not limited to oscillatory temperature. Thus, by describing oscillator temperature as the only cause of oscillator bias, the defendants' tutorial is inaccurate.

### E. The Defendants Mischaracterize The '450 Patent As Teaching The Transmission of Acquisition Assistance Data Directly To A GPS Receiver

At slide 61 of their written submission (approximately 19 minutes and 55 seconds into the defendants' tutorial), the defendants wrongly suggest that the '450 patent teaches bouncing the satellite broadcast signal off the wireless network directly to the GPS receiver. Compare the direct transmission from the satellite to a GPS receiver at slide 11 to the graphic on slide 61 illustrating the alleged retransmission to the GPS receiver. The '450 patent, however, specifically teaches that the wireless network 41 supplies the current ephemeris and time models of the satellites to the controller 22, through the <u>cellular</u> antenna 21 (A1 or A2). *See* Figure 5, column 7, lines 12-26. The satellite data sent to assist in the acquisition of GPS satellite signals is <u>not</u> sent to the <u>GPS</u> antenna 20 (A1 or A2). Indeed, the cellular network transmits that data on a different frequency and at a much higher speed (1.2 Kbps to 19.6 Kbps v. 50 bps). Any suggestion that the cellular network simply re-transmits the GPS signals received is wrong and is at odds with what is shown in the '450 patent.

Plaintiff ITT objects to the technical tutorial submitted by the defendants. The portion of the tutorial that purports to address the '450 patent, starting at slide 54, is riddled with inaccuracies and includes improper attorney argument. The defendants attribute so little value to the innovations found in the '450 patent that they wrongly advise at slide 79 that the GPS field has "remained essentially unchanged since the technology was invented in the 1970s." But with the technology of the '450 patent, GPS receivers no longer read any part of the GPS broadcast message and the time to first fix has been reduced to seconds, not minutes, even in reception-challenged "Urban Canyons."

The Honorable Leonard P. Stark
January 21, 2011
Page 4

        Very truly yours,

        DAVIDSON BERQUIST JACKSON & GOWDEY, LLP and
        FOX ROTHSCHILD LLP

        /s/ Gregory B. Williams
        _____
        Gregory B. Williams