## DAVIDSON BERQUIST JACKSON & GOWDEY, LLP

4300 WILSON BLVD., SUITE 700
ARLINGTON, VIRGINIA 22203

March 11, 2011

The Honorable Leonard P. Stark
United States District Court for the District of Delaware
844 King Street, Room 4209
Wilmington, DE 19801

> Re: **ITT Manufacturing Enterprises, Inc. v. Cellco Partnership, et al.**
> **U.S.D.C., D. Del., Civil Action No. 09-190-LPS**

Dear Judge Stark:

Plaintiff ITT submits this response to the March 10, 2011 letter of defendant Qualcomm regarding ITT's alleged privilege waiver.

### A. Counsel's Disclosure To the Court Mirrors Earlier Disclosures

Qualcomm asserts that counsel's brief, in-court descriptions of two meetings between ITT's trial counsel and ITT's patent reexamination counsel results in a broad waiver of privilege. Specifically, at the January 28, 2011 *Markman* hearing, the undersigned (Jay Berquist) described two meetings between ITT's trial counsel and Mr. Pat Finnan, ITT's counsel in the Patent Office re-examination proceedings. The first meeting was described as bringing Mr. Finnan "up to speed" on the patent and the patented technology. At the second meeting, Mr. Finnan disclosed the methodology he employed to create additional claims for presentation to the Patent Office. *See Markman* Tr. page 55, line 19 through page 56, line 3, attached at Tab A. But ITT never asserted a privilege over this information and Mr. Finnan himself disclosed the same information to the defendants more than a year ago at his March 2, 2010 deposition.

At that deposition, without objection, Mr. Finnan described his first meeting with ITT's trial counsel as follows:

> And I met with Tom Blasey and Jay and basically learned about what -
> - you know, what the -- what the patent was about and what the parties
> had argued about the -- about the prior art, and just got myself in a
> situation where I was up to speed.

Tab B, Finnan Tr. 115:4-9. Later, again without objection, Mr. Finnan was asked about the new claims he presented and he testified as follows:

> The purpose of adding that claim, which is the same as the other
> dependent claims that were added, was to present the examiner with a
> more complete set of claims to consider in evaluating the patentability
> of the claims over the prior art.

Tab B, Tr. 193:16-194:4; *see also* Tr. 172:14-173:9. Mr. Finnan further explained that he adopted this methodology because "you don't know what the examiner's going to find allowable or not allowable." Tab B, Tr. 173:5-6. The Preliminary Amendment Mr. Finnan filed with the Patent Office during the reexamination proceeding documented the correlation of specific passages of the '450 patent specification with each of the additional claims presented. *See* June 15, 2006 Preliminary Amendment, p. 10 (*see e.g.* "support for these claims is found in the '450 patent at least at column 4, lines 13-15 and at column 7, lines 5-16"), attached at Tab C.

Counsel's in-court descriptions of these two meetings substantively tracks the information previously disclosed to the defendants. Thus, contrary to Qualcomm's assertion, the undersigned counsel did not disclose anything not previously known to Qualcomm. Nor did ITT intentionally waive any prior assertions of privilege. If Qualcomm or the other defendants had additional questions regarding the methodology Mr. Finnan used to create the patent claims he presented during the reexamination proceeding, they should have asked those questions at the deposition – that information was not privileged, and indeed, Mr. Finnan testified at length on this issue at his deposition. *See, e.g.,* Tab B, Tr. 137:21-143:7, 156:20-160:21, 168:16-169:16, 171:23-177:22, 181:20-190:24. Rather than simply asking further, non-privileged questions, Qualcomm insisted on presenting more than a dozen questions designed to invade the privilege by asking Mr. Finnan's about his conversations with ITT. Qualcomm's interest, then as now, was to invade the privilege. But the in-court description of these two meetings did not divulge conversations between ITT and Mr. Finnan, but instead disclosed nothing more than what had been disclosed to the defendants previously. As such, Qualcomm presents no basis to re-open discovery or to eviscerate ITT's attorney-client and work product protections.

### B. ITT Is Not Using Privilege As Both A Sword and Shield

Disclosure of a specific privileged communication to a third party waives the privilege attached *to that particular communication.* A waiver must be clear and intentional. *Robert Bosch LLC v. Pylon Mfg. Corp.,* 263 F.R.D. 142, 145 (D. Del. 2009). When determining if the waiver extends beyond that particular communication, to related but undisclosed communications, the standard is fairness. *Teleglobe Communs. Corp. v. BCE, Inc. (In re Teleglobe Communs. Corp.),* 493 F.3d 345, 361 (3rd Cir. 2007). While it is unfair to allow a party to use privilege as both a sword and a shield, that is not the case here.

In this case, even if one assumes, *arguendo,* that the communication was privileged, unlike the situation in which a party is relying upon counsel's opinion as a defense, Mr. Berquist did not describe the two meetings with Mr. Finnan in order to support a trial contention or to otherwise give ITT an advantage in the litigation. Rather Mr. Berquist was responding to this Court's question directed to origin of the claimed "Satellite Data Message block" and to provide a historical backdrop for the Court. ITT has gained no advantage in this litigation by describing the method by which Mr. Finnan generated those new claims and Qualcomm can identify none, other than to insinuate that ITT's purpose in filing the reexamination was improper. But the process Mr. Finnan used to create the new claims does not even bear on that much broader issue.

This is not a "sword and shield" case where a party relies upon a legal opinion substantively, but then asserts privilege to shield that opinion from discovery. Indeed, it is for this reason that

The Honorable Leonard P. Stark
March 11, 2011
Page 3

Qualcomm's heavy reliance on *Smith v. Alyeska Pipeline Service Co.*, 538 F.Supp. 977 (D. Del 1982) is misplaced. In that case, the plaintiff "voluntarily sent a copy of an opinion letter" from counsel to the defendant. *Id.* at 980. Thus, the party there was substantively relying upon counsel's opinion. Given the very real differences between trial counsel's arguments and the opinions provided legal experts, courts are "less inclined to extend a waiver of privilege to the communications of trial counsel as opposed to opinion counsel." *Parker-Hannifin Corp. v. Seiren Co.*, 2009 U.S. Dist. LEXIS 26863 (D. Del. 2009), attached at Tab D. Here, Mr. Berquist's in-court descriptions of what happened at those meetings were not intended to provide ITT with an unfair advantage and ITT has not used privilege as both a shield and a sword. Indeed, had Mr. Berquist chosen a slightly different phraseology, and simply described how Mr. Finnan generated the new claims, without mention of any communication between himself and Mr. Finnan, the description would have been the same, but Qualcomm would have no basis to assert waiver. ITT has gained no unfair advantage.

### C. Waivers Are To Be Narrowly Construed

If trial counsel's in-court description of these two meetings does constitute a waiver, then that waiver should be limited to the actual comments made at the *Markman* hearing. *Id.* Where, as here, the disclosure does not create an unfair advantage for the disclosing party, the waiver is usually limited to the communication actually disclosed. *Teleglobe*, 493 F.3d at 361. If, however, ITT is deemed to have somehow gained from counsel's brief description of a communication between himself and Mr. Finnan, extending the scope of the waiver is "not a punitive measure, so courts do not imply a broader waiver than necessary to ensure all parties are treated fairly." *Id.* The scope of even that waiver is limited to *communications relating to the same subject matter*. *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996).

Here, counsel's in-court descriptions relate to (1) steps taken to bring Mr. Finnan up to speed on the patent and the technology and (2) how Mr. Finnan created the claims that he presented in the reexamination proceedings. Qualcomm already knows what happened at the first meeting between counsel and how Mr. Finnan created the claims he presented during the patent reexamination because it inquired about them at Mr. Finnan's deposition. ITT never took the position that what Mr. Finnan did, or how he did it, was privileged. The fact that Mr. Finnan may have explained his methodology to trial counsel does not create a basis to assert privilege over that methodology, and ITT never took that position. Instead, Qualcomm asks the Court to find a waiver as to the "rationale" (*i.e.*, the purpose) behind the new and amended claims. This is a different issue than the one raised by Mr. Berquist at the *Markman* hearing. At most, Qualcomm is entitled to know what Mr. Finnan told ITT's trial counsel about how he created the new claims. But that information has also been provided to Qualcomm, by what Mr. Finnan said at his deposition and from the explanations Mr. Finnan included in the preliminary amendment he filed on June 15, 2006.

Qualcomm's request for a comprehensive waiver of privilege and work product protections should be denied. Counsel's in-court descriptions of the meetings with ITT's reexam counsel mirrored the information previously provided to the defendants through discovery and those in-court descriptions provided no unfair advantage to ITT.

The Honorable Leonard P. Stark
March 11, 2011
Page 4

                        Very truly yours,

                        FOX ROTHSCHILD, LLP AND
                        DAVIDSON BERQUIST JACKSON & GOWDEY, LLP

                        <u>/s/ Gregory B. Williams and James D. Berquist</u>
                        James D. Berquist