IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ITT MANUFACTURING ENTERPRISES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CELLCO PARTNERSHIP (d/b/a Verizon ) <br> Wireless), LG ELECTRONICS, INC., LG ) <br> ELECTRONICS USA, INC., and LG ) <br> MOBILECOMM U.S.A., INC., KYOCERA ) <br> CORPORATION, KYOCERA ) <br> INTERNATIONAL, INC., KYOCERA ) <br> WIRELESS CORP., and KYOCERA ) <br> COMMUNICATIONS, INC., and QUALCOMM ) <br> INC., ) <br> ) <br> Defendants. ) | C.A. No. 09-190-LPS <br><br> **JURY TRIAL DEMANDED** <br><br> **PUBLIC VERSION** |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' *DAUBERT*
MOTION TO EXCLUDE THE TESTIMONY OF DR. WILLIAM O. KERR**

OF COUNSEL:

Roger G. Brooks
Teena-Ann V. Sankoorikal
Jefferson E. Bell
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Ave.
New York, NY 10019-7475
Tel: (212) 474-1000

Dated: July 5, 2012
Public Version Dated: July 12, 2012
1066814/34172

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Qualcomm Inc. and
filing on behalf of all Defendants*

# TABLE OF CONTENTS

**Page**

Table of Authorities ...................................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

I.    ITT'S NEXUS ARGUMENTS ARE WRONG ON THE LAW AND THE "FACTS". .... 3

    A.    ITT and Dr. Kerr Are Wrong about the Law. ......................................................... 3

    B.    ITT's Attempts to Distinguish Defendants' Caselaw Fall Flat. ............................. 5

    C.    Dr. Kerr Put Forth No Creditable Evidence of a Nexus. ........................................ 6

II.    DR. KERR'S FAILURE TO PERFORM A CLAIM-BY-CLAIM ANALYSIS RENDERS HIS OPINION IRRELEVANT AND INADMISSIBLE. ................................ 9

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*,
   229 F.3d 1120 (Fed. Cir. 2000) ............................................................................................ 6

*Cable Elec. Prods., Inc. v. Genmark, Inc.*,
   770 F.2d 1015 (Fed. Cir. 1985) ......................................................................................... 4, 5

*Demaco Corp. v. F. Von Langsdorff Licensing, Ltd.*,
   851 F.2d 1387 (Fed. Cir. 1988) ..................................................................................... 3, 4, 8

*Gambro Lundia AB v. Baxter Healthcare Corp.*,
   110 F.3d 1573 (Fed. Cir. 1997) ............................................................................................ 6

*In re DBC*,
   545 F.3d 1373 (Fed. Cir. 2008) ............................................................................................ 6

*In re Huang*,
   100 F.3d 135 (Fed. Cir. 1996) .............................................................................................. 3

*In re Mettke*,
   570 F.3d 1356 (Fed. Cir. 2009) ............................................................................................ 6

*Media Technologies Licensing, LLC v. Upper Deck Co.*,
   596 F.3d 1334 (Fed. Cir. 2010) ............................................................................................ 6

*Ormco Corp. v. Align Tech., Inc.*,
   463 F.3d 1299 (Fed. Cir. 2006) ............................................................................................ 9

*Railroad Dynamics, Inc. v. A. Stucki Co.*,
   579 F. Supp. 353 (1983) ....................................................................................................... 8

*Rambus Inc. v. Hynix Semiconductor Inc.*,
   254 F.R.D. 597 (N.D. Cal. 2008) ..................................................................................... 4, 7

*Tec Air, Inc. v. Denso Manufacturing Michigan, Inc.*,
   192 F.3d 1353 (Fed. Cir. 1999) ............................................................................................ 6

**Statutes & Rules**

Fed. R. Evid. 401 ......................................................................................................................... 4

Fed. R. Evid. 702 ......................................................................................................................... 4

Defendants[1] respectfully submit this brief in reply in further support of Defendants' *Daubert* motion to exclude the testimony of Dr. William O. Kerr.

**PRELIMINARY STATEMENT**

ITT readily admits in its opposition brief that Dr. Kerr was required to "quantif[y] the commercial success" of the supposedly patented technology and "follow[] controlling case authority in establishing the required nexus between the [supposedly] patented invention and the commercial success of the [allegedly] infringing products". (ITT Kerr Opp. at 1.) However, Dr. Kerr utterly failed to perform this task, and nothing in ITT's opposition establishes that he came anywhere close to doing so. Dr. Kerr admitted at his deposition that he did *nothing* to determine (*i.e.*, "quantify") the "worth" or "value" of the supposedly patented aspects of MS-Based assisted-GPS technology (Kerr Dep. at 202:24-204:11) and that he did not even "attempt to evaluate the commercial success of any other features" of Defendants' allegedly infringing cell phone, cell phone chipset, and cell phone network products (*id.* at 86:8-13). Although ITT argues to the contrary, the sum total of Dr. Kerr's opinion is that some of Defendants' feature-rich products sell well, and that these sales (supposedly) demonstrate the commercial success of a subset of just one of their products' features: that is, the allegedly patented aspects of MS-Based technology. As set forth in Defendants' opening brief, that analysis is insufficient as a matter of law to establish the causal nexus required by Federal Circuit precedent, and thus Dr. Kerr's opinions would not be useful, would be confusing to the trier of fact, and must be excluded. (Def. Kerr Br. at 11.)

---

[1] The terms "Defendants", "ITT", "Patent", and "Kerr Dep." are used herein as they were in Defendants' initial brief to exclude Dr. Kerr (D.I. 485). ITT's opposition to Defendants' motion to exclude Dr. Kerr (D.I. 511) is referred to herein as "ITT Kerr Opp.". Defendants' opening brief to exclude Dr. Kerr (D.I. 485) is referred to herein as "Def. Kerr Br.". All exhibits referenced herein, unless otherwise noted, are attached to the previously-filed Declaration of Marc J. Khadpe (D.I. 490).

In response, ITT does little more than wave its hands and make sweeping conclusions without the support of fact or law. Although ITT argues that "the proofs demanded by Defendants and their expert are not required under controlling legal precedent" (ITT Kerr Opp. at 2), ITT misreads even the cases it cites in trying to save Dr. Kerr's opinions. The law is clear that Dr. Kerr cannot simply ignore (as he did) the fact that Defendants' products support a huge variety of non-infringing functions in addition to the MS-Based assisted-GPS functions that are the subject of the asserted claims. (*See infra* Section I.A.) In addition, although ITT claims that Defendants' caselaw is not "even remotely similar" or applicable to Dr. Kerr's analysis, a review of those precedents shows that ITT is wrong: the cases and the governing standards are as Defendants have described them. (*See infra* Section I.B.) Finally, while ITT claims that Dr. Kerr provided "ample evidence" of the required nexus between the commercial success of Defendants' products and MS-Based technology (ITT Kerr Opp. at 4), no evidence that Dr. Kerr identified causally links the relevant aspects of MS-Based technology—or even MS-Based technology as a whole—to the success of Defendants' products. For that matter, much of the "evidence" that ITT now asks the Court to focus on is not even part of Dr. Kerr's analysis, and is thus irrelevant. (*See infra* Section I.C.)

Dr. Kerr's opinions must also be excluded for the separate and additional reason that he admittedly engaged in no claim-by-claim analysis at all. Dr. Kerr's opinion, which collapses all 57 claims of the Patent into a single vague discussion and conclusion, would not aid the relevant obviousness analysis, which all agree must take place on a claim-by-claim basis. ITT makes no creditable response on this point. (*See infra* Section II.)

## ARGUMENT

## I. ITT'S NEXUS ARGUMENTS ARE WRONG ON THE LAW AND THE "FACTS".

### A. ITT and Dr. Kerr Are Wrong about the Law.

The relevant legal test is clear. When, as here, the supposedly patented inventions (certain aspects of MS-Based technology) are not coextensive with the accused products (Defendants' cell phones, chipsets, and network services), the patentee must establish a causal "nexus" between the patented invention and the demonstrated commercial success. *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996). Specifically, the patentee must establish that the claimed commercial success is a "direct result of the unique characteristics of the claimed invention" as opposed to other functionality of the accused products. *See id.*; *see also* Def. Kerr Br. at 6-7 (citing additional authority).

ITT attempts to soften this standard in two respects so that Dr. Kerr's analysis can appear to comply with the relevant law. However, ITT is wrong on both counts, and by Dr. Kerr's own admissions, he came nowhere near to applying the correct test.

*First*, ITT is mistaken when it argues that Dr. Kerr did not need to consider and account for the possible impact of the many non-infringing functions of Defendants' accused products (such as making phone calls, sending texts, and so forth) in his commercial success analysis. (*See* ITT Kerr Opp. at 2, 3.) Specifically, ITT cites *Demaco Corp. v. F. Von Langsdorff Licensing, Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988), for the proposition that "a patentee is not required to disprove that other unpatented features contributed to the commercial success of the product which includes the patented technology" in establishing its *prima facie* case. ITT's reliance on *Demaco* is misplaced.[2] The holding ITT cites applies only to circumstances in which

---

[2] For a further discussion of *Demaco* and ITT's errors in relying upon it here, *see* Defendants' Opposition to Plaintiff's *Daubert* Motion to Preclude the Testimony of Defendants'

3

the patented invention and accused products are *coextensive* and a nexus is thus presumed. *See id.* at 1392, 1394. Here the products are not coextensive, so ITT must instead establish a nexus, as *Demaco* elsewhere states. *Id.* at 1392 (if the two are not coextensive, "the patentee must show *prima facie* a legally sufficient [*i.e.*, causal] relationship between that which is patented and that which is sold"). Dr. Kerr made no attempt to establish that the allegedly patented inventions caused the commercial success to which he points. (*See* Def. Kerr Br. at 7-11.)

*Second*, ITT's effort to relax the standard that Dr. Kerr's testimony must meet is contrary to law. According to ITT, Dr. Kerr's opinions should be admitted so long as they have "*any tendency* . . . to permit the trier of fact to infer the existence of" commercial success. (ITT Kerr Opp. at 3 (*quoting Rambus Inc. v. Hynix Semiconductor Inc.*, 254 F.R.D. 597, 603 (N.D. Cal. 2008)) (emphasis added in ITT's brief).) ITT is wrong. Its quoted rule is the baseline test for relevance under Federal Rule of Evidence 401, not the governing standard for the admissibility of expert testimony to which this Court's "gatekeeper" function applies. *See* Fed. R. Evid. 702. As ITT elsewhere recognizes, the correct standard for expert testimony is higher: it must also "comport with existing law". (Opening Br. in Supp. of Pl.'s *Daubert* Mot. to Preclude the Test. of Defs.' Proposed Commercial Success Expert (D.I. 483) at 7.) Conveniently, ITT omits the portion of *Rambus* that spells out the "existing law": a patentee "must explain how the product's commercial success was caused, at least in part, by the claimed invention and not by 'other economic and commercial factors unrelated to the technical quality of the patented subject matter'". *Rambus*, 254 F.R.D. at 602 (*quoting Cable Elec. Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1027 (Fed. Cir. 1985), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999).) This is precisely the test that

---

Proposed Commercial Success Expert, Dr. Gregory Leonard ("Defs.' Opp. to Pl.'s Mot. to Exclude Dr. Leonard") (D.I. 519) at 5-6).

4

Defendants set out in their opening brief. (*See* Def. Kerr Br. at 6-7 (quoting *Cable Electric Prods.*).) Dr. Kerr did not even come close to meeting this test. His opinion that the patented technologies are "commercially successful" must, therefore, be excluded.

ITT insists in its brief that Dr. Kerr "underst[ood] that his analysis must tie the commercial success of the products practicing ITT's [allegedly] patented technology to the technology itself" (ITT Kerr Opp. at 5), but Dr. Kerr's testimony firmly establishes that he did *not* apply this standard. On the contrary, as set forth in Defendants' opening brief, Dr. Kerr flatly rejected the proper approach to accounting for the non-patented features of Defendants' products in analyzing commercial success: "[i]t doesn't really matter very much whether that [patented] technology is embedded in a very large, complex product and is only a small piece of it or whether it's sold by itself. It doesn't make any sense to think about it in those terms". (Kepp Dep. at 143:2-6.) When asked whether he agreed that, to establish commercial success, "one must show . . . that the commercial success was due to the patented technology specifically, as opposed to other aspects of the product", Dr. Kerr testified that this was "*partly true, but not particularly relevant* to the question of the commercial success of the [patented] technology". (*Id.* at 28:18-25 (emphasis added).) ITT does not even attempt to explain any of this testimony. Nor could it. As Dr. Kerr's testimony makes clear, his understanding of the analysis to be performed was contrary to the governing law.

**B. ITT's Attempts to Distinguish Defendants' Caselaw Fall Flat.**

ITT contends that Defendants rely on only a "handful of cases" to discredit Dr. Kerr's analysis and that these "cases are factually distinguishable from the analysis performed by Dr. Kerr". (ITT Kerr Opp. at 7.) This is wishful thinking. Defendants cited no fewer than six on-point cases—four from the Federal Circuit—that establish that Dr. Kerr's singular focus on the sales of Defendants' products was insufficient as a matter of law to establish the commercial

5

success of the allegedly infringing MS-Based technologies. (*See* Def. Kerr Br. at 6-11.) More cases standing for the same proposition can easily be added.[3] Indeed, as shown above (*see supra* Section I.A), the *Demaco* case ITT cites actually repeats the same standard. No cited authority supports ITT's efforts to wish away the causal nexus requirements.[4]

ITT attempts to dodge Defendants' authority by arguing that all of these cases involved situations in which only sales data was put forth as evidence of a nexus. Dr. Kerr, ITT asserts, provided "a myriad of evidence" beyond that. (ITT Kerr Opp. at 7-9.) But, as shown in Section I.C below, he did nothing of the kind. The only concrete evidence of "success" Dr. Kerr (as opposed to counsel) cites is sales data—and even ITT agrees this is insufficient. (*See id.* at 7.)

### C. Dr. Kerr Put Forth No Creditable Evidence of a Nexus.

Given his mistaken view of the relevant standard, it is not surprising that Dr. Kerr did not put forth evidence of a causal nexus between the accused MS-Based technologies and the claimed commercial success. ITT's assertion that he did so is wrong. None of the five categories of "evidence" that ITT points to is creditable, and some of this "evidence" is not even found in Dr. Kerr's report.[5]

---

[3] *See, e.g., Media Technologies Licensing, LLC v. Upper Deck Co.*, 596 F.3d 1334, 1339 (Fed. Cir. 2010) (patentee failed to show that success was tied to invention as opposed to "factors that are unrelated to the quality of the patented subject"); *In re Mettke*, 570 F.3d 1356, 1361 (Fed. Cir. 2009) (patentee "failed to meet his burden because he has not shown that the alleged commercial success is due to the claimed invention"); *In re DBC*, 545 F.3d 1373, 1384 (Fed. Cir. 2008) (sales data alone "does not reveal in any way that the driving force behind those sales was the claimed" invention).

[4] As explained in Defs.' Opp. to Pl.'s Mot. to Exclude Dr. Leonard (D.I. 519 at 7 n.8), ITT's citations to *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120 (Fed. Cir. 2000); *Tec Air, Inc. v. Denso Manufacturing Michigan, Inc.*, 192 F.3d 1353 (Fed. Cir. 1999); and *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573 (Fed. Cir. 1997), are inapposite because, in each case, the claimed invention was coextensive with the product sold.

[5] ITT also contends that Dr. Kerr relied upon "industry experience" in assessing commercial success. (ITT Kerr Opp. at 4.) This vague assertion is meaningless. Elsewhere, ITT states that evidence of market share and "continuous use of the patented feature while other features were

6

*First*, ITT points to overall sales data for Qualcomm's cell phone chipsets as "support[ing] the inference that the patented invention was commercially successful".[6] (ITT Kerr Opp. at 4.) This is actually the principal *flaw* of Dr. Kerr's report: mere sales of a product (chipsets) including the claimed invention (aspects of MS-Based mode) among many other (and more important) features[7] *do not* demonstrate a nexus and cannot be the basis for admissible expert testimony. (*See* Def. Kerr. Br. at 9-11; *see also Rambus*, 254 F.R.D. at 605.)

*Second*, ITT points to a quotation (not testimony) from a Verizon executive to the effect that "VZNavigator" [sic], a turn-by-turn direction application, is "perceived" to add value for Verizon's customers. (ITT Kerr Opp. at 4.) Putting aside the fact that a single quotation from a public speech is a slender reed indeed, VZ Navigator is irrelevant. Although ITT claims (without citation) that VZ Navigator is "reliant on the MS-Based mode" (*id.*), Dr. Kerr (correctly) testified at his deposition that this is not the case. (*See* Kerr Dep. at 180:13-181:9 (VZ Navigator not required to use MS-Based mode).) Whatever "perceived" value VZ Navigator may have does not mean that the supposedly patented MS-Based technologies caused whatever commercial success the accused products may have enjoyed.[8]

---

not copied" can be used to establish a nexus. (ITT Kerr Opp. at 3.) This is irrelevant because Dr. Kerr did not opine on either subject. (*See, e.g.*, Kerr Dep. at 104:21-105:3 (no market share analysis).)

[6] Dr. Kerr even admitted at his deposition that he "[didn't] know" if all of the Qualcomm chipsets listed were commercially successful, and that he "[didn't] think anything about any particular chipset that was included in this data". (Kerr Dep. at 56:19-57:5.)

[7] As set forth in more detail in Section II *infra*, ITT and Dr. Kerr also conflate the success of MS-Based mode as a whole with the success of the supposedly patented inventions, which concern only certain aspects of MS-Based mode. This error pervades Dr. Kerr's "evidence".

[redacted]

7

*Third*, ITT similarly touts Dr. Kerr's references to the widespread success of Qualcomm's "gpsOne" solution and the rise of "Location Based Services" ("LBS") more generally. (ITT Kerr Opp. at 4-5.) Crucially, neither ITT nor Dr. Kerr ties any success whatsoever of gpsOne or LBS to MS-Based mode (and the claimed inventions specifically).[9] The success of gpsOne and LBS, even if demonstrated, is accordingly irrelevant.

*Fourth*, ITT points to testimony from a Verizon representative about the merits of MS-Based technology. (*Id.* at 5.) However, this "evidence" is nowhere in Dr. Kerr's report, which he testified contained all of his opinions and the bases for those opinions (as it was required to do).[10] (Kerr Dep. at 8:14-21.) This newfound "evidence", therefore, is irrelevant to the admissibility of Dr. Kerr's opinions. In any event, testimony that MS-Based technology has some benefits does not establish that those benefits "directly" caused *any* commercial success.[11] Indeed, Dr. Kerr affirmatively testified that consumers *do not* choose cell phones or cell networks on the basis of MS-Based technology. (*Id.* at 68:10-18.)

*Fifth*, ITT asserts that Dr. Kerr "relied, in part, on the fact that Verizon required all cellphones sold after 2005 to support" MS-Based technology. (ITT Kerr Opp. at 8.) That is wrong. Dr. Kerr neither cited this "evidence" nor claimed to rely on it anywhere in his report,

---

[9] Other position location methods such as, for example, MS-Assist mode, standalone GPS, and "advanced forward link trilateration" are also used in gpsOne and LBS. (Ex. 11 at 36.)

[10] Tellingly, while ITT asserts that "[t]he record supports Dr. Kerr's showing of the required nexus", it does not cite to any parts of Dr. Kerr's report. (ITT Kerr Opp. at 5.)

[11] In its brief, ITT (misleadingly) states that "[t]estimony about the advantages of the patented invention 'easily supports the inference that the claimed invention itself was responsible for this [commercial] success'". (ITT Kerr Opp. at 4 (purportedly quoting *Demaco*, 851 F.2d at 1393).) The *Demaco* court did not make this sweeping pronouncement of law. The material quoted by ITT is taken from a parenthetical quotation in a string cite in *Demaco*, and the underlying decision from the Eastern District of Pennsylvania, *Railroad Dynamics, Inc. v. A. Stucki Co.*, 579 F. Supp. 353 (1983), was commenting only on the sufficiency of the (unspecified) facts before it.

8

and it is thus irrelevant to the admissibility of his opinions. Moreover, as set forth in Defendants' opposition to ITT's motion to exclude Dr. Leonard, no such "requirement" exists. (Defs.' Opp. to Pl.'s Mot. to Exclude Dr. Leonard at 7-8.)

## II. DR. KERR'S FAILURE TO PERFORM A CLAIM-BY-CLAIM ANALYSIS RENDERS HIS OPINION IRRELEVANT AND INADMISSIBLE.

ITT explicitly acknowledges that obviousness must be "determin[ed] as a matter of law on a claim-by-claim basis". (ITT Kerr Opp. at 6.) Dr. Kerr explicitly admitted at his deposition that he did no claim-by-claim commercial success analysis. (Kerr Dep. at 35:20-36:2, 36:19-23.) As set forth in Defendants' opening brief, that is sufficient to disqualify Dr. Kerr's analysis: if Dr. Kerr has not determined whether any specific claimed invention is commercially successful, then he has no relevant opinion to offer, and his testimony cannot reliably be used to determine whether any specific claim is obvious.[12] (Def. Kerr Br. at 12-13.)

ITT's sole response on this point is that "Dr. Kerr focused his analysis on the MS-Based mode of operation, the technology at issue in this case". (ITT Kerr Opp. at 7.) That is doubly incorrect. As set forth in Defendants' opening brief, Dr. Kerr did not "focus" on MS-Based mode; he simply looked to the success of Defendants' products in general. (Def. Kerr Br. at 7-11.) But even had Dr. Kerr looked to "MS-Based mode", that would not have been sufficient. MS-Based mode is broadly comprised of many different technologies with many different functions. (*See, e.g.*, Ex. 12 ¶¶ 68, 72-75; Ex. 11 at 28-32.) The Patent is comprised of 57 specific, individual inventions, and only the novel aspects of those inventions are relevant to commercial success. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006) ("if the feature that creates the commercial success was known in the prior art, the success

---

[12] ITT contradictorily faults Defendants' supposed lack of caselaw on this subject (ITT Kerr Opp. at 6) while acknowledging Defendants' cited authority (ITT Kerr Opp. at 7 n.4).

9

is not pertinent"). Dr. Kerr cannot opine on the commercial success of the claimed inventions (which are many and narrow) while evaluating MS-Based technology as a whole (which is broader than any claimed invention).

Dr. Kerr, who is not a technical expert, should have been informed about each of the *separate* (supposed) inventions in the Patent, so that he could address the commercial success of these (supposed) inventions *separately*. He was not.[13] As a result, Dr. Kerr's opinions are simply not useful for the required claim-by-claim obviousness inquiry.

## CONCLUSION

For these reasons, Defendants respectfully request that Defendants' *Daubert* motion to exclude the opinion testimony of Dr. William O. Kerr be granted.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Roger G. Brooks
Teena-Ann V. Sankoorikal
Jefferson E. Bell
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Ave.
New York, NY 10019-7475
Tel: (212) 474-1000
Dated: July 5, 2012;
Public Version Dated: July 12, 2012
1066814/34172

By: /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Qualcomm Inc. and filing on behalf of all Defendants*

---

[13] ITT contends that Dr. Kerr "properly relied upon the conclusions of Plaintiff's technical expert, Dr. Heppe" in directing his commercial success inquiry. (ITT Kerr Opp. at 7.) But Dr. Kerr did not rely on Dr. Heppe at all. Dr. Kerr admitted that, prior to developing his opinions, he had neither spoken with Dr. Heppe (Kerr Dep. at 37:11-12) nor read either of Dr. Heppe's reports (*id.* at 11:7-9). Nor did ITT's counsel communicate Dr. Heppe's opinions (or any other facts) to Dr. Kerr. (*Id.* at 37:19-38:8.) In any event, it is not even clear as to what "conclusion" of Dr. Heppe's ITT is referring. ITT provided no citation for his supposed opinion that "claim-by-claim the [Patent] covers the MS-Based mode". (ITT Kerr Opp. at 7.)

10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on July 12, 2012, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on July 12, 2012, the attached document was Electronically Mailed to the following person(s):

Gregory Brian Williams
FOX ROTHSCHILD LLP
919 North Market Street, Suite 1300
P.O. Box 2323
Wilmington, DE 19899-2323
gwilliams@foxrothschild.com
*Attorneys for Plaintiff*
*ITT Manufacturing Enterprises, Inc.*

James D. Berquist
J. Scott Davidson
Donald L. Jackson
DAVIDSON BERQUIST JACKSON &
  GOWDEY LLP
4300 Wilson Boulevard, Suite 700
Arlington, VA 22203
jberquist@dbjg.com
sdavidson@dbjg.com
djackson@dbjg.com
*Attorneys for Plaintiff*
*ITT Manufacturing Enterprises, Inc.*

John G. Day
Tiffany Geyer Lydon
Caroline Hong
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899
jday@ashby-geddes.com
tlydon@ashby-geddes.com
chong@ashby-geddes.com
*Attorneys for Defendant*
*Cellco Partnership (d/b/a Verizon Wireless)*

Edward C. Donovan
Christopher R. Nalevanko
KIRKLAND & ELLIS LLP
655 15th Street, NW
Washington, DC 20005
edward.donovan@kirkland.com
christopher.nalevanko@kirkland.com
*Attorneys for Defendant*
*Cellco Partnership (d/b/a Verizon Wireless)*

| | |
|---|---|
| Gregory F. Corbett<br>WOLF GREENFIELD & SACKS, P.C.<br>600 Atlantic Avenue<br>Boston, MA 02210<br>gcorbett@wolfgreenfield.com<br>*Attorneys for Defendant*<br>*Cellco Partnership (d/b/a Verizon Wireless)* | Paul E. Crawford<br>CONNOLLY, BOVE, LODGE & HUTZ<br>1007 North Orange Street<br>P.O. Box 2207<br>Wilmington , DE 19899<br>pcrawford@cblh.com<br>*Attorneys for Defendants LG Electronics, Inc.,*<br>*LG Electronics USA, Inc., LG Mobilecomm*<br>*U.S.A., Inc., Kyocera Corporation, Kyocera*<br>*International, Inc., Kyocera Wireless Corp.,*<br>*and Kyocera Sanyo Telecom, Inc.* |
| Jeffery K. Sherwood<br>Frank C. Cimino, Jr.<br>DeAnna D. Allen<br>Robert L. Kinder<br>DICKSTEIN SHAPIRO LLP<br>1825 Eye Street NW<br>Washington, DC 20006-5403<br>ITT-Kyocera-LG@dicksteinshapiro.com<br>*Attorneys for Defendants LG Electronics, Inc.,*<br>*LG Electronics USA, Inc., LG Mobilecomm*<br>*U.S.A., Inc., Kyocera Corporation, Kyocera*<br>*International, Inc., Kyocera Wireless Corp.,*<br>*and Kyocera Sanyo Telecom, Inc.* | Katie J.L. Scott<br>DICKSTEIN SHAPIRO LLP<br>700 Hansen Way<br>Palo Alto, CA 94304-1016<br>ITT-Kyocera-LG@dicksteinshapiro.com<br>*Attorneys for Defendants*<br>*LG Electronics, Inc., LG Electronics USA,*<br>*Inc., LG Mobilecomm U.S.A., Inc., Kyocera*<br>*Corporation, Kyocera International, Inc.,*<br>*Kyocera Wireless Corp., and Kyocera Sanyo*<br>*Telecom, Inc.* |
| Larry R. Schmadeka<br>LEE, HONG, DEGERMAN, KANG<br>& WAIMEY, P.C.<br>660 South Figueroa Street. Suite 2300<br>Los Angeles, CA 90017<br>lschmadeka@lhlaw.com<br>*Attorneys for Defendants LG Electronics, Inc.,*<br>*LG Electronics USA, Inc., and LG Mobilecomm*<br>*U.S.A., Inc.* | |

By:  /s/ David E. Moore
     Richard L. Horwitz
     David E. Moore
     POTTER ANDERSON & CORROON LLP
     (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

910256 / 34172