## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ITT MANUFACTURING ENTERPRISES, INC.,

          Plaintiff,

        v.

CELLCO PARTNERSHIP (d/b/a Verizon
Wireless), LG ELECTRONICS, INC., LG
ELECTRONICS USA, INC., and LG
ELECTRONICS MOBILECOMM U.S.A., INC.,
KYOCERA CORPORATION, KYOCERA
INTERNATIONAL, INC., KYOCERA
WIRELESS CORP., and KYOCERA
COMMUNICATIONS, INC., and QUALCOMM
INC.,

          Defendants.

C.A. No. 09-190-LPS

**JURY TRIAL DEMANDED**

**PUBLIC VERSION**

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR
## SUMMARY JUDGMENT OF NO 35 U.S.C. §112 INVALIDITY

Gregory B. Williams (I.D. No. 4195)
FOX ROTHSCHILD LLP
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE 19899
(302) 622-4211

James D. Berquist, Esq.
J. Scott Davidson, Esq.
Donald L. Jackson, Esq.
DAVIDSON BERQUIST JACKSON &
GOWDEY, LLP
4300 Wilson Blvd. 7th Flr.
Arlington, VA 22203

*Attorneys for Plaintiff*
ITT MANUFACTURING ENTERPRISES, INC.

## TABLE OF CONTENTS

I.    DEFENDANTS HAVE NOT PROVIDED SUFFICIENT EVIDENCE SUPPORTING
      THEIR WRITTEN DESCRIPTION AND ENABLEMENT DEFENSES ......................... 1

A.    "Earth-Based Source" and "Independent Source" .................................................. 2

B.    "Satellite Data Message Block" ............................................................................ 2

C.    Method for Using "Prior Knowledge of Receiver Position to Resolve Ambiguity in a Time-
      Position of a GPS Solution" and Using Data from the Satellite Data Message Block to
      "Resolve Ambiguity in a Time-Position of a GPS Solution" ................................. 3

II.   DEFENDANTS HAVE NOT PROVIDED SUFFICIENT EVIDENCE SUPPORTING
      THEIR BEST MODE DEFENSE .......................................................................... 5

III.  DEFENDANTS HAVE NOT PROVIDED SUFFICIENT EVIDENCE SUPPORTING
      THEIR CLAIM DEFINITENESS DEFENSE .......................................................... 6

A.    "Means...For Processing" .................................................................................... 6

B.    "Controller Means" ............................................................................................. 8

IV.   CONCLUSION .................................................................................................. 10

## TABLE OF AUTHORITIES

CASES

*Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) *(en banc)* ...................1

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 381 F.3d 1371 (Fed. Cir. 2004) .............6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................................1, 5, 6

*Cordis Corp. v. Medtronic Ave, Inc.*, 339 F.3d 1352 (Fed. Cir. 2003) .....................................1

*Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528 (Fed. Cir. 1991) ....................................6

*In re Katz Interactive Call Processing Litig.*, 639 F.3d 1303 (Fed. Cir. 2011) ........................9

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142 (Fed. Cir. 2004) ........................1

*LizardTech, Inc. v. Earth Resource Mapping, PTY, Inc.*,
      424 F.3d 1336 (Fed. Cir. 2005) ...............................................................................1, 8

*Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, (Fed. Cir. 2006) ............5

*Sugar Apparatus Mfg. Co. v. Yaryan Mfg. Co.*, 43 F. 140 (E.D. Pa. 1890) ..............................8

## I.   DEFENDANTS HAVE NOT PROVIDED SUFFICIENT EVIDENCE SUPPORTING THEIR WRITTEN DESCRIPTION AND ENABLEMENT DEFENSES

Because failure to comply with the written description and enablement requirements are affirmative defenses, defendants were required to come forward with sufficient evidence of each element of these defenses from which a reasonable jury could conclude that the requirements were not satisfied by clear and convincing evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Defendants failed to do so here.

The written description requirement only mandates that the patent's disclosure reasonably convey to those of ordinary skill in the art that the inventors had possession of the claimed subject matter as of the filing date. *Ariad Pharms. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). "[T]he specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Id.*; *see also, LizardTech, Inc. v. Earth Resource Mapping, PTY, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005); *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1154 (Fed. Cir. 2004); *Cordis Corp. v. Medtronic Ave, Inc.*, 339 F.3d 1352, 1364 (Fed. Cir. 2003). Because the person of ordinary skill "comes to the patent with the knowledge of what has come before," the embodiments of the specification need not contain examples explicitly covering the full scope of the claim language in order to comport with Section 112, and every detail of the invention need not be spelled out in the specification. *LizardTech*, 424 F.3d at 1345.

Despite defendants' protestations, the law is clear – the specification need not spell out every detail to satisfy the written description requirement.

A.    "Earth-Based Source" and "Independent Source"

Defendants contradict the law of this case when they state that "[t]he Patent does not link

the term "source" to anything concrete." (D.I. 514 at 6).  That issue was already resolved against

the defendants, and it is inappropriate for them to disregard the work that this Court has already

done on that issue.

> The Court finds that the term "source" needs no construction, as it has a well
> understood plain and ordinary meaning.

(D.I. 453 at 52).  It necessarily follows that the inventors had in their possession that very plain

and ordinary, well-understood meaning of "source" at the filing date.  It is no surprise here that

those of ordinary skill in the art would have understood how specific data could be stored and

forwarded.  (*See* D.I. 496 at 6).

The same is true of the term "independent."   Defendants say "[t]here is no description of

– or a reference to – an 'independent source' in the Patent specification."  That is inconsistent

with what the Court already found.  The Court held that "'independent' means 'other than a GPS

satellite'" based on the fact that "[t]he patent repeatedly states that the invention provides an

alternative source of the data transmitted by GPS satellites – i.e., a source other than the GPS

satellites." (D.I. 453 at 53 (emphasis added)).

Therefore, the '450 specification gives adequate description to demonstrate ITT's

possession of the "earth-based source" and "independent source" as of the time of filing, and

claims 1-3, 5-6, and 9-57 are not invalid for failure to satisfy the written description requirement.

B.    "Satellite Data Message Block"

Defendants contradict the law of this case when they contend that the patent describes the

Satellite Data Message block as only a "900 bit block." (D.I. 514 at 6, 16).  During the *Markman*

process, the Court spent a lot of time and attention on the 900 bit issue.  After quoting the '450

2

patent col. 4, lines 10-15, the Court correctly noted that "[t]his excerpt cuts against defining 'Satellite Data Message' as precisely 900 bits since it indicates that the 'Satellite Data Message' for eight satellites can be contained in less than 7200 bits (*i.e.*, less than eight times 900 bits)." (D.I. 453 at 20-21 (emphasis added)).  Thus, the Court has already determined that the inventors showed that they were in possession of a less-than-900 bit block at the time of filing. Defendants' Opposition Brief disregards this Court's ruling.

The specification also teaches elsewhere that the inventors were in possession of a less-than-900 bit block when it described how the invention works with "the ephemeris and time models of the GPS constellation." (Exhibit A to D.I. 1 at col. 2:36-41; *see also* col. 7:12-16). There is no material question of fact that the ephemeris and time models are collectively less than 900 bits (D.I. 496-1 Exhibit A at 82).

Hence, the '450 specification gives adequate description, and the Court has already acknowledged such, to demonstrate ITT's possession of the transmission of a "Satellite Data Message block" of less than 900 bits as of the time of filing, and claims 1-3, 5-6, 12, 14-19, 21-24, 38-52, and 55-57 are not invalid for failure to satisfy the written description requirement.

C.    **Method for Using "Prior Knowledge of Receiver Position to Resolve Ambiguity in a Time-Position of a GPS Solution" and Using Data from the Satellite Data Message Block to "Resolve Ambiguity in a Time-Position of a GPS Solution"**

Defendants again contradict the law of this case when they contend that the patent does not describe "a method for determining…time position pairs." (D.I. 514 at 4-5).  The Court has already held:

> FIG. 3 and the patent's description of it explain how prior knowledge of receiver position is used to 'resolve ambiguity in a time position of a GPS solution.' (*See* '450 patent, col. 3 line 58-59 ('FIG. 3 illustrates how the a prior [sic] knowledge of position resolves the ambiguity in time-position.'))  The pertinent part of the description states: ['450 patent quotation omitted].  ('450 patent, col. 6, lines 6-16).  This indicates that multiple time-position pairs exist that are consistent with

3

> the pseudorange measurements, and the ambiguity is resolved when a single pair within the 'position uncertainty cylinder' and the 'time uncertainty window is determined.

(D.I. 453 at 42-43).  Thus, the issue of the inventors' possession of the method for determining time position pairs at the time of filing has already been effectively resolved against the defendants.  The inventors described how to do it in their disclosure as identified by the Court above.

In addition to the above quote, the specification demonstrates further that the inventors had possession of the necessary input data needed to resolve the ambiguity – the satellite ephemerides plus initial estimates of user location and system time.  (Exhibit A to D.I. 1 at col 3:9-12, col. 2:60-3:12)                                                                     :on of

this ambiguity for one

is cc

have been                                                              ality is quite the

opposite.                                                              . in the art would

understand the invention could be implemented.  (*Id.*)

The '450 specification gives adequate description to demonstrate ITT's possession of, and enable making and using of, the method of employing "prior knowledge of receiver position to resolve ambiguity in a time-position of a GPS solution" as of the time of filing, and thus, claims 10, 26-36, 44, 52, and 54 are not invalid for failure to satisfy the written description or

enablement requirements.

## II. DEFENDANTS HAVE NOT PROVIDED SUFFICIENT EVIDENCE SUPPORTING THEIR BEST MODE DEFENSE

Because failure to comply with the best mode requirement is an affirmative defense, Defendants were required to come forward with sufficient evidence of each element of the defense from which a reasonable jury could conclude that the best mode requirement was not satisfied by clear and convincing evidence. *See Celotex*, 477 U.S. 317, 322. Defendants failed to do so here.

Asserting that an inventor failed to disclose the best mode of practicing the invention necessarily implies, as a predicate, that some modes are preferred, and some modes are not preferred. Assuming, arguendo, that "combin[ing] data and voice on the save [sic] voiceband

(

(

modes other than time domain separation or frequency domain separation that could be used to send data on the same channel. Thus, if there were only two ways of separating data and voice on the same channel in 1992, and if the inventors contemplated using both of those methods (*i.e.*, time domain separation and frequency domain separation), then there is no method that is preferred over any other method. The inventors contemplated all known ways of separating data and voice on the same channel. Accordingly, there cannot be a best mode violation.

By failing to identify methods other than time domain separation and frequency domain separation, defendants have failed to establish a necessary element of their best mode defense.

ain

n

5

defendants have not even argued otherwise. *See Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1321 (Fed. Cir. 2006) ("we note that '[s]ubject matter that is not part of the invention that is claimed need not be included in the specification, and thus is not subject to the best mode requirement'") (internal citations omitted); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 381 F.3d 1371, 1379 (Fed. Cir. 2004) ("The obligation to disclose the best mode relates to the invention that is described and claimed."); *Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528, 1532 (Fed. Cir. 1991) ("The best mode inquiry is directed to what the applicant regards as the invention, which in turn is measured by the claims."). Summary judgment against defendants' best mode defense is appropriate for this additional reason.

## III. DEFENDANTS HAVE NOT PROVIDED SUFFICIENT EVIDENCE SUPPORTING THEIR CLAIM DEFINITENESS DEFENSE

Because failure to comply with the claim definiteness requirements is an affirmative defense, defendants were required to come forward with sufficient evidence of each element of the defense from which a reasonable jury could conclude that the claims were indefinite by clear and convincing evidence. *See Celotex*, 477 U.S. 317, 322. Defendants failed to do so here.

### A. "Means...For Processing"

The "means ... for processing" element is clearly linked to an algorithm disclosed in the specification for the function of rapid signal acquisition for in-view satellites. (D.I. 496 at 15-16). Both the Examiner of the '450 reexamination proceedings and plaintiff agree that Figure 2 and its associated disclosures provide sufficient support for the "means...for processing" element. (*Id.*) Defendants' argument that the claimed language "processing...to enable" is different from literal words used in the '450 patent to describe Figure 2 fails because it does not address the full concepts described in the specification itself or the knowledge of those of skill in the art in 1992. There is no requirement that the literal words "processing" and "enabling"

6

exactly match between the claims and the specification, where, as here, the concepts link perfectly.

That said, the '450 specification does indeed describe "processing" in the context of enabling rapid acquisition. The text associated with Figure 2, for example, is full of descriptions of processing that occurs to enable the phone to perform rapid acquisition. (Exhibit A to D.I. 1 at col. 4:29-46). Figure 4, as well, is literally described as "a flow chart of signal *processing*" (*Id.* at col. 3:26) including "[t]he detailed logic of the algorithm for rapid GPS signal acquisition" (*Id.* at col. 6:42-44). The Abstract links the "controller" element with those "processing" acts, including processing to extricate the satellite position data from a separate communication channel. (*Id.* at Abstract, lines 9-16). Per the Court's *Markman* Order, the microprocessor of that very controller element is the associated structure for the "means...for processing." (D.I. 454 at 2).

The specification also links "enablement" to the algorithm of Figures 2/4 and other general descriptions of "rapid acquisition." The specification does not have to use the word "enable" in order to link the algorithms in Figures 2 and 4 to the claim language "to enable...to rapidly locate and access." The algorithm of Figure 2 is described as processing to a result that "allows [*i.e.*, 'enables'] subsequent satellites to be rapidly and reliably acquired" (Exhibit A to D.I. 1 at col. 4:42-46). The algorithm of Figure 4 shows a flow chart of steps ("obtain...," "identify," etc.) that lead to, *i.e.,* "enable," the final steps of rapid acquisition.

In footnote 8, defendants wrongly criticize ITT's linking of the algorithm illustrated in Figure 2 to the claimed algorithm because, according to defendants, Figure 2 "only" refers to Satellite Data Messages. That's not true. The purpose of the drawings is to generally illustrate the invention. It would be a "waste of labor, as well as unusual," to draw all the possible

7

embodiments of the claimed invention; *Sugar Apparatus Mfg. Co. v. Yaryan Mfg. Co.,* 43 F. 140, 146-147 (E.D. Pa. 1890); especially given that the specification is written for a person of ordinary skill in the art. *LizardTech, Inc. v. Earth Resource Mapping, PTY, Inc.,* 424 F.3d 1336, 1345 (Fed. Cir. 2005). Figures 2 and 4 of the '450 patent use the term "Satellite Data Messages," and it is true that one way of practicing plaintiff's patented invention is to retrieve the full Satellite Data Messages. However, the specification and especially the claims are clear – another way of practicing the claimed invention is to retrieve only the satellite ephemeris and time models (*i.e.* the claimed "Satellite Data Message block(s)"). (Exhibit A to D.I. 1, claims 1 & 17). In fact, the specification describes acquisition of the Satellite Data Messages for the in-view GPS satellites as occurring, in one embodiment, when "[t]he current ephemerides and time models [*i.e.* the Satellite Data Message block] of the GPS satellite constellation" are provided to the GPS receiver via a data link. (*Id.* at 7:2-16). Moreover, in the bottom rectangular block, Figure 4 itself states that the microprocessor will "periodically receive ephemeris and time model updates on the 8 in-view satellites." (*Id.* at Figure 4). Consistent with the remainder of the specification, this portion of Figure 4 makes it clear that the only portions of the 900-bit message relevant to rapid acquisition are the ephemeris and time model data, which is periodically updated. It is thus appropriate to look to Figures 2 and 4 for the algorithm associated with the "means...for processing." Defendants have failed to provide sufficient evidence that the "means for processing" element is unsupported by the specification.

**B.    "Controller Means"**

Defendants' argument regarding the controller means is based on a false premise that the controller means is performing specialized computer functions. The function of the "controller means" element is "connecting said satellite data message block to said mobile GPS receiver."

8

(D.I. 454).[1]  As shown in Figure 5, data is received from the cellular receiver/transmitter 21, and

connected to the GPS receiver 20.  Connecting data from an input to an output is what all general

purpose computers do.  *See In re Katz Interactive Call Processing Litig.*, 639 F.3d 1303, 1316

(Fed. Cir. 2011) (holding that functions like "processing," "receiving," and "storing" are

coextensive with the general purpose processor disclosed in specification).  The fact that the

processor in the '450 patent is connecting Satellite Data Message blocks to a mobile GPS

receiver does not change the fact that every general purpose computer receives certain data

inputs, and generates outputs based on those inputs.  Thus, because the structure corresponding

to the "controller means" is a general purpose processor (not a special purpose processor), no

algorithm is required at all.  *Id.*

 Even if one were to view the structure of the "controller means" as calling for a special

purpose processor, the '450 specification discloses a corresponding algorithm.  The full support

for this term is addressed in detail in Plaintiff's Opening Brief, and it is clear from that

discussion that the controller means term of asserted claims 5 and 24 is clearly linked to an

algorithm described in the specification, that one for connecting a satellite data message block to

the mobile GPS receiver.  (D.I. 496 at 16-17).  Defendants fail to cite any of the '450 patent

specification itself in arguing that no algorithm for implementing the controller means is present.

(D.I. 514 at 11).

 The '450 patent specification in fact gives ample description of the way in which a

mobile GPS receiver (*i.e.* a cellular telephone) can establish a data link to retrieve the necessary

---

[1] Defendants' continued use the term "connecting means" rather than the actual term "controller means" causes confusion throughout this section of their brief, and distracts attention away from the fact that a structural "controller" is described in the patent.

: telephone,

er and

establishing a data link via a modem in the cellular phone, and a modem to a service center"),

col. 7:8-16 ("...The current ephemeris and time models of the GPS satellite constellation stored

in the satellite almanac database 41 would then be provided to the unit via that data link – the

cellular telephone system 42."); *see also* D.I. 496 at 16-17).  Indeed, processing signals to extract

data is a common processing step and need not be further described

... existing knowled

Thus, there was no need for the applicants to describe detailed interface standards – the

general techniques for retrieving data from a server, which were well known to those of skill in

the art, could be applied with confidence to achieve their desired and expected results in

retrieving current ephemeris and time models just as they were previously applied to retrieve

other types of data.  For good measure, the specification does however describe two completely

different methods of delivering data – broadcast and two-way – thereby indicating that the use of

multiple data transfer standards was contemplated by the inventors.  (Exhibit A to D.I. 1 at col.

7:9-12).

## IV.    CONCLUSION

Plaintiff respectfully asks this Court to enter an Order granting summary judgment in its

favor by finding that all of the 35 U.S.C. §112 defenses asserted by Defendants fail because the

'450 patent meets the written description, enablement, best mode, and claim definiteness

requirements of 35 U.S.C. § 112.

Respectfully submitted,

FOX ROTHSCHILD LLP

/s/ Gregory B. Williams
Gregory B. Williams (I.D. No. 4195)
FOX ROTHSCHILD LLP
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE 19899
Tel:  302-622-4211
and
Of Counsel:

James D. Berquist, Esq.
J. Scott Davidson, Esq.
Donald L. Jackson, Esq.
Davidson Berquist Jackson & Gowdey, LLP
4300 Wilson Blvd. 7th Flr.
Arlington, VA
Tel: (703) 894-6400
Fax: (703) 894-6430

Attorneys for Plaintiff
ITT MANUFACTURING ENTERPRISES, INC.

Date:  July 5, 2012
Public Version Dated:  July 13, 2012

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 13th day of July, 2012, counsel for ITT

Manufacturing Enterprises, Inc. served copies of the foregoing on the following counsel of

record:

*Counsel for Cellco Partnership (d/b/a Verizon Wireless):*

John G. Day
Tiffany Geyer Lydon
Caroline Hong
ASHBY & GEDDES
500 Delaware Ave., 8th Floor
Wilmington, DE 19899

Edward C. Donovan
KIRKLAND & ELLIS LLP
655 15th St., NW
Washington, DC 20005

Gregory F. Corbett
Wolf Greenfield 7 Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206

*Counsel for Qualcomm, Inc.:*

Richard L. Horowitz
David E. Moore
POTTER ANDERSON & CORROON, LLP
1313 Market St., 6th Floor
Wilmington, DE 19899-0951

Keith R. Hummel
Roger G. Brooks
Teena-Ann V. Sankoorikal
CRAVATH SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Ave.
New York, NY 10019-7475

*Counsel for Kyocera International, Inc., Kyocera Wireless Corp., and Kyocera Communications, Inc. (f/k/a Kyocera Sanyo Telecom Inc.):*

Paul E. Crawford
CONNOLY BOVE LODGE & HUTZ LLP
1007 N. Orange St.
P.O. Box 2207
Wilmington, DE 19899

Jeffrey K. Sherwood
DICKSTEIN SHAPIRO LLP
1825 Eye St., NW
Washington, DC 20006

*Counsel for LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics MobileComm U.S.A., Inc.:*

Paul E. Crawford
CONNOLY BOVE LODGE & HUTZ LLP
1007 N. Orange St.
P.O. Box 2207
Wilmington, DE 19899

Jeffrey K. Sherwood
DICKSTEIN SHAPIRO LLP
1825 Eye St., NW
Washington, DC 20006


/s/ Gregory B. Williams
Gregory B. Williams (I.D. No. 4195)