## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EXELIS INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | C.A. No. 09-190-LPS |
| | : | |
| | : | |
| CELLCO PARTNERSHIP (d/b/a Verizon | : | |
| Wireless), LG ELECTRONICS, INC., LG | : | |
| ELECTRONICS USA, INC., and LG | : | |
| ELECTRONICS MOBILECOMM U.S.A., | : | |
| INC., KYOCERA CORPORATION, | : | |
| KYOCERA INTERNATIONAL, INC., | : | |
| KYOCERA WIRELESS CORP., and | : | |
| KYOCERA COMMUNICATIONS, INC., | : | |
| and QUALCOMM INC., | : | |
| | : | |
| Defendants. | : | |

Gregory B. Williams, Esq., FOX ROTHSCHILD LLP, Wilmington, DE.
James D. Berquist, Esq., J. Scott Davidson, Esq., Donald L. Jackson, Esq., DAVIDSON
BERQUIST JACKSON & GOWDEY, LLP, Arlington, VA.

> Attorneys for Plaintiff Exelis Inc.

Paul E. Crawford, Esq., CONNOLLY BOVE LODGE & HUTZ LLP, Wilmington, DE.
Jeffrey K. Sherwood, Esq., DICKSTEIN SHAPIRO LLP, Washington, DC.
Katie J.L. Scott, Esq., DICKSTEIN SHAPIRO LLP, Palo Alto, CA.

> Attorneys for Defendants LG Electronics, Inc., LG Electronics USA, Inc., and LG
> Electronics MobileComm U.S.A., Inc.; and Kyocera Corporation, Kyocera International,
> Inc., Kyocera Wireless Corp., and Kyocera Communications, Inc.

John G. Day, Esq., Tiffany Geyer Lydon, Esq., Caroline Hong, Esq., ASHBY & GEDDES,
Wilmington, DE.
Edward C. Donovan, Esq., Christopher R. Nalevanko, Esq., KIRKLAND & ELLIS LLP,
Washington, D.C.
Gregory F. Corbett, Esq., WOLF GREENFIELD & SACKS, P.C., Boston, MA.

> Attorneys for Defendant Cellco Partnership (d/b/a Verizon Wireless).

Richard L. Horwitz, Esq., David E. Moore, Esq., POTTER ANDERSON & CORROON, LLP, Wilmington, DE.
Keith R. Hummel, Esq., Roger G. Brooks, Esq., Teena-Ann V. Sankoorikal, Esq., CRAVATH SWAINE & MOORE LLP, New York, NY.

      Attorneys for Defendant Qualcomm Inc.

---

## MEMORANDUM OPINION

November 6, 2012
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are numerous motions filed by Plaintiff and Defendants:

(1) Plaintiff's motion for summary judgment of no violation of 35 U.S.C. § 305 (D.I. 491);

(2) Plaintiff's motion for summary judgment of no invalidity under 35 U.S.C. § 112 (D.I. 495);

(3) Plaintiff's motion for summary judgment against Defendants' affirmative defenses (D.I. 497);

(4) Plaintiff's *Daubert* motion to preclude testimony of Defendants' proposed commercial

success expert (D.I. 482); (5) Plaintiff's *Daubert* motion to preclude the testimony of

Defendants' proposed technical expert (D.I. 493); (6) Defendants' motion for partial summary

judgment for Plaintiff's violation of 35 U.S.C. § 305 (D.I. 478); (7) Defendants' motion for

partial summary judgment of invalidity (D.I. 486); (8) Defendants' motion for partial summary

judgment of non-infringement (D.I. 488); and (9) Defendants' *Daubert* motion to exclude the

testimony of Plaintiff's commercial success expert (D.I. 484).

The Court heard oral argument on these motions, among others, on September 28, 2012.[1]

*See* Motion Hr'g Tr., Sep. 28, 2012 (D.I. 561) (hereinafter "Tr.").

## I.    BACKGROUND

Plaintiff, Exelis Inc. ("Exelis" or "Plaintiff"), filed this patent infringement action against

Cellco Partnership, Qualcomm Inc., LG Electronics USA, Inc., LG Electronics, Inc., LG

Mobilecomm U.S.A., Inc., Kyocera Corp., Kyocera International, Inc., Kyocera Wireless Corp.,

and Kyocera Communications, Inc. (collectively "Defendants") on March 23, 2009.  (D.I. 1)

---

[1]Also pending at the hearing were Plaintiff's Motion to Substitute Exelis Inc. as Plaintiff and
Reform the Caption (D.I. 465), and LGE and Kyocera's Motion For Partial Summary Judgment
on the Pleadings (Counts 30, 32 and 33) (D.I. 156).  The Court's rulings on these motions are
reflected in prior orders.  (D.I. 552, 563)

Plaintiff alleges that Defendants infringe U.S. Patent No. 5,365,450 (the "'450 patent"), entitled

"Hybrid GPS/Data Line Unit for Rapid, Precise, and Robust Position Determination." (*Id.*)

The '450 patent has been litigated in this District before. *See ITT Manufacturing Enterprises,*

*Inc. v. Samsung Electronics America, Inc. et al.*, 1:03-cv-1086-GMS (the "Samsung Litigation").

As part of the earlier litigation, Chief Judge Sleet issued a claim construction order. *See*

Samsung Litigation D.I. 124 ("Samsung Order").[2] After the Samsung Litigation was resolved by

settlement, Chief Judge Sleet granted the parties' joint motion to vacate the Samsung Order. *See*

Samsung Litigation D.I. 256, 257.

Thereafter, Plaintiff filed for *ex parte* reexamination of the '450 patent by the U.S. Patent

and Trademark Office (the "PTO"). The PTO granted the reexamination request. During

reexamination, Plaintiff amended the original claims and added new claims 12-57. On February

3, 2009, the PTO issued a Reexamination Certificate allowing all fifty-seven claims.

Subsequently, Plaintiff initiated this patent infringement action.

The Court conducted a *Markman* hearing on January 28, 2011. (D.I. 427) On December

29, 2011, the Court issued a Memorandum Opinion (D.I. 453) and Order (D.I. 454) construing

the disputed claim terms of the '450 patent.

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine

issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

---

[2]The Samsung Order appears in the record of the instant case as D.I. 293 Ex. B.

2

586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). A factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S. 317, 322 (1986) (entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). On a motion for summary judgment, the Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

For issues on which the nonmoving party bears the burden of proof at trial, the moving party may seek summary judgment by relying "solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Celotex*, 477 U.S. at 324. Once such a motion is made,

3

the nonmoving party's response must "go beyond the pleadings and by her own affidavits, or by

the depositions, answers to interrogatories, and admissions on file, designate specific facts

showing that there is a genuine issue for trial." *Id*. (internal quotation marks omitted).

## III.    PARTIES' CROSS-MOTIONS UNDER 35 U.S.C. § 305

The parties have filed competing motions seeking summary judgment under

35 U.S.C. § 305. (D.I. 478, 491) Both motions raise the same issues: (1) whether Plaintiff

improperly broadened any claim during reexamination; and (2) whether Plaintiff sought

reexamination for an improper purpose.

### A.    Section 305

Section 305 of the Patent Act provides:

> In any reexamination proceeding under this chapter, the patent
> owner will be permitted to propose any amendment to his patent
> and a new claim or claims thereto, in order to distinguish the
> invention as claimed from the prior art cited under the provisions
> of section 301 of this title, or in response to a decision adverse to
> the patentability of a claim of a patent. No proposed amended or
> new claim enlarging the scope of a claim of the patent will be
> permitted in a reexamination proceeding under this chapter.

Whether claims have been enlarged is a matter of claim construction, which presents a question

of law. *See Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1580 (Fed. Cir. 1995).

### B.    MPEP

The Manual of Patent Examining Procedure (MPEP) explains that "[a] claim presented

in a reexamination proceeding 'enlarges the scope' of the claims of the patent being reexamined

where the claim is ***broader than each and every claim of the patent***." MPEP § 2258.III.A

(emphasis added). According to the MPEP, the standard used to evaluate a claim presented

4

during reexamination is the same standard that is used to evaluate claims for purposes of reissue. *See id.* "A claim which has been broadened in a reissue as compared to its scope in the patent is not a broadened reissue claim if it is narrower than, or equal in scope to, *any other claim which appears in the patent.*" MPEP § 1412.03.II (emphasis added).

### C.  Claim Scope

Defendants contend that, during reexamination, Plaintiff improperly broadened certain claims in violation of 35 U.S.C. § 305. (*See* D.I. 479) At issue is the scope of the term "Satellite Data Message block." According to Defendants, in the original patent, "Satellite Data Message block" was limited to a block that is exactly 900 bits in length. After reexamination, however, this Court construed "Satellite Data Message block" to mean blocks that are "900 bits *or less*" (emphasis added) in length. In Defendants' view, this apparent change in scope requires the Court to invalidate every claim that includes the term "Satellite Data Message block."

Plaintiff disagrees. According to Plaintiff, the term "Satellite Data Message block" always covered blocks that are "900 bits or less" in length, and the scope of this term has not changed in any way during reexamination. (D.I. 509)

In their cross-motions for summary judgment, both sides ask the Court to compare just the scope of the original "Satellite Data Message block" term to the reexamined scope of the same term. (D.I. 479 at 11, 18-19; D.I. 492 at 7) However, this may not be the correct standard for evaluating whether a claim has been "broadened" within the meaning of Section 305. As noted above, at least according to the MPEP, the proper comparison is between the reexamined claim and "*each and every claim*" of the [original] patent." MPEP § 2258.III.A (emphasis added); *see also id.* § 1412.03.II.

5

Neither side has compared the scope of the reexamined patent claims to the scope of the broadest pre-reexamination claim(s). This comparison was not addressed in the parties' briefs. During oral argument, in response to the Court's inquiries, neither side was able to comment meaningfully on the potential applicability of the MPEP to the Section 305 issue. (Tr. at 44-45, 51) While Defendants contended that "the facts of the case would [not] put [the Court] up against that question" (*id.* at 51), the Court is not convinced this is so.

For example, even if this Court's construction of "Satellite Data Message block" has resulted in reexamined claim 1 being broader than original claim 1, the reexamined claim 1 still may not violate Section 305 if reexamined claim 1 is narrower than some other claim of the original '450 patent. Original claim 10, for instance, does not require either a "Satellite Data Message block" or a "Satellite Data Message." Instead, original claim 10 requires "determining the position of a user of a GPS receiver for receiving GPS satellite signals containing GPS broadcast data." The parties have not asked the Court to construe "GPS broadcast data," nor have the parties provided the Court with the materials it would need in order to construe this term. On the present record, the Court is unable to rule out the possibility that the proper comparison is between reexamined claim 1 and original claim 10 and that completion of this comparison would require construction of "GPS broadcast data."

This uncertainty prevents the Court from granting either side's Section 305 summary judgment motion. Instead, the Court will deny both motions without prejudice to renew following trial in connection with any post-trial motions that may be filed. If one or both motions are renewed, the parties shall address the issues regarding claim scope identified in this Opinion.

6

### D.   Purpose

Regardless of whether Plaintiff improperly broadened the scope of its claims in reexamination, Defendants contend that they are entitled to summary judgment of invalidity under Section 305 also because Plaintiff initiated the reexamination for an improper purpose. (D.I. 479 at 9-10)  Specifically, Defendants contend that Plaintiff pursued reexamination for the purpose of "fixing" the claim construction ruling issued by Chief Judge Sleet in the Samsung Litigation. Plaintiff denies this allegation. Plaintiff insists, instead, that it initiated the reexamination for the proper purpose of addressing prior art asserted during the Samsung Litigation and to correct typographical errors in the patent.  (D.I. 492 at 14-16; D.I. 529 at 9)  For example, Plaintiff corrected the claim to provide antecedent basis for certain terms, which is proper. Hence, Plaintiff seeks summary judgment on the grounds that the purpose of the reexamination was proper.

Even taking the evidence in the light most favorable to Defendants, the Court agrees with Plaintiff that no reasonable fact finder could conclude that Plaintiff violated Section 305 by pursuing reexamination of the '450 patent for an improper purpose.  Plaintiff has identified several proper purposes for seeking reexamination and Defendants have not offered any *evidence* – or, indeed, anything other than suspicion – to counter Plaintiff's contentions.  Plaintiff was entitled to seek reexamination to address prior art asserted in the Samsung Litigation and to correct the typographical errors in the original patent claims. *See Slimfold Mfg. Co. v. Kinkead Industries, Inc.*, 810 F.2d 1113, 1116 (Fed. Cir. 1987) (amendment to provide antecedent basis does not change substantive scope of claims); *In re Yamamoto*, 740 F.2d 1569, 1572 (Fed. Cir. 1984) (stating claims may be amended or added to distinguish invention as claimed from prior

7

art, or in response to decision adverse to patentability of a claim).  The PTO found that the

reexamined claims should issue despite the prior art.  Defendants have not come close to

producing clear and convincing evidence that the reexamined claims are invalid due to Section

305.

Hence, while the Court is denying the Section 305 motions without prejudice, if and

when those motions are renewed they will be limited to the issue of the scope of the reexamined

claims.  Plaintiff is entitled to summary judgment that the reexamination was not filed for an

improper purpose.

IV.     **CROSS-MOTIONS FOR SUMMARY JUDGMENT
        OF VALIDITY/INVALIDITY UNDER 35 U.S.C. § 112**

The parties have filed competing motions seeking partial summary judgment under 35

U.S.C. § 112.  (D.I. 486, 495)  These motions present issues of indefiniteness, written

description, enablement, and best mode.

A.      **Defendants' Motion For Partial Summary Judgment Under 35 U.S.C. § 112**

Defendants seek partial summary judgment that: (1) certain claim terms are indefinite;

and (2) certain claims are invalid for lack of written description.  (D.I. 486)  The Court will deny

Defendants' motion on both grounds.

1.      **Indefiniteness**

The indefiniteness portion of Defendants' summary judgment motion focuses on two

claim terms: "processing means" and "connecting means."  Both terms are written in "means-

plus-function" format and have been construed by the Court.  (D.I. 454)  Defendants contend that

both claim terms recite functions implemented by a microprocessor, requiring disclosure in the

8

specification of a corresponding algorithm. (D.I. 487 at 8-10)  According to Defendants, no such algorithm is provided in the specification, rendering invalid the claims in which these terms appear. (*Id.* at 10-13)

"In cases involving a computer-implemented invention in which the inventor has invoked means-plus-function claiming, [the Federal Circuit] has consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor." *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008). Rather, a "computer-implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof, and the corresponding structure is the algorithm." *Id.* (internal quotation marks omitted). The sufficiency of the disclosure of algorithmic structure must be judged in light of what one of ordinary skill in the art would understand the disclosure to impart. *See id.* at 1337.

### a.   "Processing Means"

The Court's claim construction for the "processing means" term is set forth below:

9

| Independent Claims | Claim Language | Construction |
|---|---|---|
| 1, 3, 4, and 17 | "means at said mobile radio station for processing said Satellite Data Message block from said earth-based source of satellite position data to enable said mobile radio station to rapidly locate and access position information from said earth orbiting GPS satellites" (the "Processing Means" term) | **Function:** "processing said Satellite Data Message block from said earth-based source of satellite position data to enable said mobile radio station to rapidly locate and access position information from said earth orbiting GPS satellite"<br><br>**Associated structure:** "the microprocessor of a controller element" |

Defendants contend that the microprocessor identified as the associated structure must

be programmed with a specific algorithm in order to perform the recited "processing" and

"enabling" functions, but no such algorithm is found in the '450 patent specification. (D.I. 487 at

7) Defendants further contend that Plaintiff's expert, in his report and deposition testimony,

supports their position that such an algorithm is required. (*Id.* at 9) Defendants also cite

deposition testimony from one of the inventors, which they claim supports their view that the

specification does not set forth any specific algorithm for the microprocessor. (*Id.* at 11-12)

Plaintiff concedes that the "processing means" claim term requires special

programming, but contends that a corresponding algorithm is disclosed. (Tr. at 107) According

to Plaintiff, an algorithm may be expressed "in any understandable terms including as a

mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient

structure." (D.I. 513 at 4) (citing *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340

(Fed. Cir. 2008)). Plaintiff contends that one of ordinary skill in the art would read the '450

specification as a whole as disclosing the necessary algorithm. (D.I. 513 at 5; Tr. at 105)

Plaintiff identifies specific portions of the patent (column 4 line 29 through column 5 line 57,

10

column 7 lines 2 through 16, and Figures 2 and 4) as providing the requisite algorithm. (D.I. 496 at 16; D.I. 513 at 5; Tr. at 106-08) Plaintiff's technical expert has opined that this "algorithm" is sufficient for purposes of one skilled in the art. (D.I. 490 Ex. 3 at 73-75)

Defendants respond that Figures 2 and 4 do not set forth a sufficient algorithm for the processor of a controller. Rather, these figures generally relate to functions performed by the GPS receiver. (Tr. at 95-96) Defendants further contend that there is no clear link between the claimed functions and the disclosure of Figures 2 and 4.

At this stage of the proceedings, the Court is not persuaded by Defendants' contentions that no algorithm for the "processing means" is disclosed in the '450 patent. Plaintiff's expert will testify that one of ordinary skill in the art, reading the specification as a whole, would find in the specified portions of the specification an algorithm. *See generally Aristocrat*, 521 F.3d at 1337 ("The sufficiency of the disclosure of algorithmic structure must be judged in light of what one of ordinary skill in the art would understand the disclosure to impart."). There is a genuine dispute of material fact that is not amenable to resolution by summary judgment. *See e.g., Metro. Life Ins. Co. v. Bancorp Servs., L.L.C.*, 527 F.3d 1330, 1338-39 (Fed. Cir. 2008) (finding that "conflict in [expert] declarations created a genuine issue of material fact that made summary judgment inappropriate"); *Ethyl Corp. v. Borden, Inc.*, 427 F.2d 206, 210 (3d Cir. 1970) (holding that court may not resolve "disputed and relevant factual issues on conflicting affidavits of qualified experts"). Accordingly, the Court will deny Defendants' motion for summary judgment that the "processing means" claim term is invalid due to indefiniteness.

**b.    "Connecting Means"**

The Court's claim construction for "connecting means" is set forth below:

11

| Independent Claims | Claim Language | Construction |
|---|---|---|
| 5 and 24 | "a controller means connecting said satellite data message block to said mobile GPS receiver" (the "Connecting Means" term) | **Function:** "connecting said satellite data message block to said mobile GPS receiver" <br><br> **Associated structure:** "a controller element which includes a microprocessor, modem, autodialer, and transmit voice/data switch" |

Defendants raise many of the same arguments for "connecting means" as for "processing means," with particular focus on the "microprocessor" identified as part of the associated structure. According to Defendants, the additional structural elements identified in the Court's construction (modem, autodialer, transmit switch) only increase the complexity of the algorithm that must be disclosed. (Tr. at 86-87) An adequate algorithm, in Defendants' view, should provide at least "some indication of how [to] use[] the modem, how [to] use the autodialer to reach the outside world . . . and how you would mesh together and invoke at the right time the modem, the autodialer and the transmit voice/data switch." (*Id.* at 87-88)

With respect to "connecting means," Plaintiff contends, first, that no algorithm needs to be disclosed. (D.I. 513 at 8) According to Plaintiff, the "connecting means" term comes within the exception identified in *In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303, 1316 (Fed. Cir. 2011), which states that functions such as"connecting" can be "achieved by any general purpose computer without special programming." In *Katz*, 639 F.3d at 1316, the Federal Circuit held that "[a]bsent a possible narrower construction" of the terms "processing," "receiving," and "storing," the disclosure of a general-purpose computer was sufficient. In a subsequent case, the Federal Circuit explained, "[i]n substance, claiming 'means for processing,' 'receiving,' and 'storing' may simply claim a general purpose computer, although in

12

means-plus-function terms." *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1364-65 (Fed. Cir. 2012). Alternatively, if an algorithm is required, Plaintiff contends that one of ordinary skill in the art would find the specification to provide the necessary disclosure, specifically at column 3 lines 1 through 6 and column 7 lines 8 through 16. (D.I. 496 at 16) Plaintiff's expert supports this contention. (D.I. 490 Ex. 13 at 75-76)

At this stage of the proceedings, in relation to the "connecting means" term, the Court finds a genuine dispute of material fact both as to whether an algorithm must be disclosed and, if so, whether one has been disclosed. This dispute is not amenable to resolution on summary judgment. *See e.g., Metro. Life*, 527 F.3d at 1338-39. Accordingly, the Court will deny Defendants' motion for summary judgment of indefiniteness with respect to the "connecting means" term.

### 2. Written description

Defendants also move for summary judgment on the grounds that claim 10 and all claims which depend from claim 10 are invalid for lack of written description. (D.I. 487 at 16) Whether a claim complies with the written description requirement of § 112, paragraph 1, is a question of fact. *See Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 962-63 (Fed. Cir. 2002). To satisfy the written description requirement, a patent specification must describe the claimed invention in sufficient detail that "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). An applicant shows possession of the claimed invention by describing the claimed invention with all of its limitations using "such descriptive means as words, structures, figures, diagrams, formulas, etc., that fully set forth the

13

claimed invention." *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).

Defendants contend they are entitled to summary judgment because "no reasonable juror could find that the claims are supported by an adequate written description."[3] (D.I. 487 at 17) However, as Defendants recognize, Plaintiff's expert report contains a lengthy analysis of written description and concludes that claim 10 complies with the requirements of 35 U.S.C. § 112. (D.I. 487 at 18-20) The parties have a genuine dispute of material fact which is not amenable to resolution on summary judgment. *See e.g., Metro. Life*, 527 F.3d at 1338-39. Accordingly, the Court will deny Defendants' motion for summary judgment on written description.

**B.     Plaintiff's Motion For Partial Summary Judgment Under 35 U.S.C. § 112**

Plaintiff seeks summary judgment that: (1) certain claims are not invalid for lack of written description or enablement; (2) the '450 patent does not fail to disclose the best mode; and (3) certain claim terms are definite. (D.I. 496) The Court will deny Plaintiff's motion on all three grounds.

**1.     Written Description And Enablement**

The chart below summarizes Defendants' written description and enablement defenses for which Plaintiff now seeks summary judgment:

---

[3]Defendants do not address the fact that the disputed language of claim 10 was present in the original application. *See* MPEP § 2163.03 ("[T]here is a strong presumption that an adequate written description of the claimed invention is present in the specification as filed."). Indeed, claim 10 has twice been examined by the PTO: once during the original prosecution and again in reexamination.

| Term | Claims | Defense |
|------|--------|---------|
| "earth-based source" and "independent source" | 1-3, 5-6, and 9-57 | written description |
| "satellite data message block" | 1-3, 5-6, 12, 14-19, 21-24, 38-52, and 55-57 | written description |
| "prior knowledge of receiver position to resolve ambiguity in the time position of the GPS solution" | 10, 26-36, 44, 52, and 54 | written description and enablement |

For all of the above-identified terms, Plaintiff's arguments largely amount to a criticism

of Defendants' expert, accompanied by citations to the specification. (D.I. 496 at 4-10) Plainly,

the parties' experts reached opposite conclusions on issues of written description and

enablement. These defenses present genuine disputes of material fact which are not amenable to

summary judgment. *See e.g., Metro. Life*, 527 F.3d at 1338-39 (finding that "conflict in [expert]

declarations created a genuine issue of material fact that made summary judgment

inappropriate"). Accordingly, the Court will deny Plaintiff's motion for summary judgment with

respect to written description and enablement.

## 2. Best Mode

Plaintiff also seeks summary judgment with respect to best mode. Whether a claim

satisfies the best mode requirement of 35 U.S.C. § 112, paragraph 2, presents a question of fact.

*See Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 963 (Fed. Cir. 2001). Assessing a best

mode defense requires inquiry into: "(1) whether the inventor subjectively considered a particular

mode of practicing the invention to be superior to all other modes at the time of filing the

application; and (2) whether the inventor adequately disclosed that superior mode." *Liquid

Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1223 (Fed. Cir. 2006) (internal quotation marks

15

omitted).

Plaintiff contends that Defendants have not satisfied either element of the best mode test. (D.I. 496 at 10-14) Defendants' expert, citing record evidence, disputes Plaintiff's version of the facts. (D.I. 514 at 18-20) The Court perceives a genuine dispute of material fact not amenable to resolution by summary judgment. Accordingly, the Court will deny Plaintiff's motion with respect to best mode.

### 3. Definiteness

Plaintiff's motion also seeks summary judgment that the "processing means" and "connecting means" terms are definite. (*See* D.I. 496 at 14-17) For the same reasons that the Court denied Defendants' motion for summary judgment of indefiniteness of these terms, the Court likewise will deny Plaintiff's motion for summary judgment of definiteness of these terms.

## V. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT

Defendants seek summary judgment with respect to four issues relating to infringement: (1) the "MS-Assist" mode of operation does not infringe; (2) claims 13 and 20 are not infringed; (3) there is no infringement under the doctrine of equivalents; and (4) the doctrine of intervening rights applies to each claim of the reexamined '450 patent. (*See* D.I. 488) For the reasons set forth below, the Court will grant Defendants' motion on issues (1), (2), and (4) and deny as moot Defendants' motion with respect to issue (3).

### A. The MS-Assist Mode Of Operation

The parties agree that, as a result of the Court's claim construction ruling (D.I. 454), there is no dispute that the "MS-Assist" mode of operation does not infringe any claim of the

16

'450 patent. (D.I. 515 at 2) Accordingly, the Court will grant summary judgment of no infringement for every claim of the '450 patent with respect to the "MS-Assist" mode of operation.

## B. Claims 13 and 20

The parties also agree that, as a result of the Court's claim construction ruling (D.I. 454), claims 13 and 20 – which both require the transmission of a 900-bit Satellite Data Message block – are not infringed. (D.I. 515 at 2) Accordingly, the Court will grant Defendants' motion for summary judgment of no infringement with respect to claims 13 and 20.

## C. Doctrine of Equivalents

Defendants seek summary judgment that the '450 patent is not infringed under the doctrine of equivalents, as Plaintiff's technical expert did not address this doctrine in his expert report. (D.I. 489 at 16-18) Plaintiff responds that the only "equivalents" issue (if it becomes disputed) is whether data sent from the satellite is equivalent to data supplied over the cellular network, a matter which is addressed in Plaintiff's expert's report. (Tr. at 161-62) Defendants do not believe any equivalents issue exists for the Court to decide. (*Id.* at 163) As the Court understands, Plaintiff is not seeking to offer evidence of infringement by equivalents other than the narrow data transfer issue described in Plaintiff's expert report. Accordingly, the Court will deny as moot Defendants' motion for summary judgment on the issue of the doctrine of equivalents.

## D. Intervening Rights

Defendants contend that the doctrine of intervening rights should apply to every claim of the '450 patent as a result of claim amendments made during reexamination. (*See* D.I. 489 at

17

8) Plaintiff concedes that intervening rights apply to all claims other than claim 1. (D.I. 515 at 5) With respect to claim 1, the Court agrees that Defendants are entitled to summary judgment that intervening rights apply.

Intervening rights prevent a patentee from recovering pre-reexamination damages for infringement of claims that were "substantively changed" during reexamination. *See Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998). A patentee can, however, recover even pre-reexamination damages for claims that survive reexamination "without substantive change." *Id.* In determining whether substantive changes have been made, a court must discern whether the scope of the new claim is identical to the scope of the prior claim. *See Slimfold*, 810 F.2d at 1115. "If substantive changes have been made to the original claims, the patentee is entitled to infringement damages only for the period following the issuance of the reexamination certificate." *Laitram*, 163 F.3d at 1346.

Defendants make three arguments in support of their contention that claim 1 was "substantively changed" during reexamination. (D.I. 489) First, Defendants argue that Plaintiff narrowed the claim to require a "storing" limitation. Second, Defendants argue that Plaintiff amended claim 1 to require (in response to a rejection) the "earth based source" to receive satellite position data from the GPS satellites – in essence, an "origin" requirement that was not present in original claim 1. Third, Defendants argue that Plaintiff broadened claim 1 by adding dependent claims specifying that the Satellite Data Message block of claim 1 is 900 bits in length.[4]

---

[4]Defendants' argument with respect to broadening has already been addressed in connection with their motion for partial summary judgment for violation of 35 U.S.C. § 305.

18

Reexamined claim 1 is reproduced below.  Plaintiff's amendments to claim 1 are shown

in strikethrough (deletions) and underline (additions):

> 1.  In a global positioning system (GPS) in which a plurality of
> earth orbiting GPS satellites transmit position information to
> mobile radio stations on earth including a Satellite Data Message
> block, the improvement comprising:
>
>> an earth based source of satellite position data for
>> all in-view GPS satellites including said Satellite
>> Data Message blocks block for each in-view
>> satellite for assisting one of said mobile radio
>> station stations to access position information from
>> said earth orbiting GPS satellites, wherein said earth
>> based source of satellite position data receives and
>> stores the satellite position data, including the
>> satellite data message block, from each of the in-
>> view GPS satellites, and an earth based
>> communication means coupled to said earth based
>> source of satellite position data,
>>
>> means coupled to said mobile radio station for
>> connecting to said earth based communication
>> means to said earth-based source of satellite
>> position data for extricating said satellite position
>> data via said non-satellite earth based
>> communication means, wherein the satellite data
>> message block supplied by said earth based source
>> to said mobile radio station is extracted from said
>> stored satellite position data, and
>>
>> means at said mobile for processing said Satellite
>> Data Message blocks block from said earth-based
>> source of satellite position data to enable said
>> mobile radio station to rapidly locate and access
>> position information from said earth orbiting GPS
>> satellite satellites.

Plaintiff contends that all of the above amendments were added only for sake of clarification and

did not result in any substantive change.  (Tr. at 158-59)  The Court disagrees.

19

First, original claim 1 did not require the earth-based source to "store" satellite position data. Plaintiff argues that the Court may "infer" a storage requirement from the words "extricating" and "source" in original claim 1. (D.I. 515 at 6-10) But nothing in the record supports defining the word "extricating" to require storage. The Court has already construed "source" to have its plain and ordinary meaning – a meaning which does not necessarily include a storage function. (D.I. 453 at 52) The passage Plaintiff identifies in the specification as containing the word "stores" does not provide a basis for limiting the claim in the manner Plaintiff contends. (D.I. 515 at 9; Tr. at 157-58) Moreover, Plaintiff admits that this passage in the specification refers only to a preferred embodiment (Tr. at 157) and that it would be "clear legal error to limit the claims to the preferred embodiment" (D.I. 339 at 14) (citing *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004)).

Original claim 1 likewise did not require a specific "origin" for satellite position data. During reexamination, the Examiner rejected claim 1 as anticipated by a Counselman reference (U.S. Pat. No. 4,809,005). In response to this rejection, Plaintiff amended claim 1 to require explicitly that "said earth based source of satellite position data receives and stores the satellite position data, including the satellite data message block, *from each of the in-view GPS satellites*." (D.I. 490 Ex. 3) (emphasis added) Plaintiff urged the Examiner that claim 1, as amended, was distinguishable from Counselman because the "shore stations" in Counselman (the alleged earth-based sources) did not receive satellite position data from the GPS satellite, but instead obtained this data from an independent source. (D.I. 490 Ex. 3) (Amendment Under § 1.530 at 23-25) Plaintiff even submitted a Declaration from one of its inventors to explain this distinction. (D.I. 490 Ex. 3) (Decl. of Ronald Bruno at 5-7) The Examiner was persuaded,

20

specifically referring to Plaintiff's argument as a reason for allowance. (D.I. 490 Ex. 3) (Notice

of Intent at 7) From this, no reasonable factfinder could conclude that the scope of claim 1 was

not "substantively changed" during the reexamination. *See Laitram*, 163 F.3d at 1348 (finding it

"difficult to conceive of many situations in which the scope of a rejected claim that became

allowable when amended is not substantively changed by the amendment").

Thus, viewing the evidence in the light most favorable to Plaintiff, the Court concludes

that the amendments to claim 1 were substantive in nature. Therefore, Defendants are entitled to

intervening rights with respect to all claims of the '450 patent. The Court will grant Defendants'

summary judgment motion on this ground.

## VI.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
         WITH RESPECT TO DEFENDANTS' AFFIRMATIVE DEFENSES

Plaintiff moves for summary judgment against the following affirmative defenses raised

by Defendants: (1) laches; (2) prosecution estoppel; (3) equitable estoppel; (4) waiver; (5) patent

misuse;[5] and (6) inventorship. (D.I. 497)[6] Defendants have not opposed Plaintiff's motion with

respect to prosecution estoppel, equitable estoppel, waiver, or inventorship. Accordingly, the

Court will grant summary judgment to Plaintiff with respect to these four affirmative defenses.

For the reasons below, the Court also will grant Plaintiff's motion with respect to laches but will

deny without prejudice Plaintiff's motion with respect to patent misuse.

---

[5]The patent misuse defense was raised only by the LGE and Kyocera defendants.

[6]At oral argument, Plaintiff's counsel also mentioned an "unclean hands" defense. (Tr. at 145)
However, that defense is not specifically addressed in either party's briefs, so the Court does not
view it as a subject raised by the pending motions.

## A. Laches

To succeed on a laches defense, Defendants must prove two elements: (1) the patent

owner unreasonably and inexcusably delayed initiating an action for patent infringement; and

(2) Defendants suffered material prejudice as a result. *See A.C. Aukerman Co. v. R.L. Chaides*

*Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992). Because Defendants bear the burden of proof

on the issue of laches, in order to survive a motion for summary judgment Defendants must

produce sufficient evidence to support a jury verdict in their favor. *See Matsushita*, 475 U.S. at

587. Defendants have not met that burden.

The relevant time period for purposes of laches is 2006 to 2009.[7] The '450 patent was

in reexamination during much of that time period. (D.I. 498 at 5-6) Plaintiff contends that the

pendency of reexamination is a legitimate excuse for purposes of laches. *See e.g., Vaupel*

*Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 878 (Fed. Cir. 1991)

("Patentees should be encouraged to avoid litigation when their patents are being reevaluated in

the PTO rather than being forced into premature litigation on penalty of being held to have been

guilty of laches."). The Court agrees. The three-year delay attributable to the pendency of the

reexamination was reasonable and excusable.

Laches also requires that Defendants have suffered some material prejudice as a result

---

[7]During oral argument, Defendants' counsel argued that the relevant time period should begin
from issuance of the patent in 1994 and extend to the filing of the instant lawsuit in 2009. (Tr. at
150-51) The Court disagrees. The MS-Based mode of operation is now the only mode accused
of infringement. That mode did not exist until 2006. Plaintiff cannot be found to have "delayed"
a patent infringement lawsuit – the first element of a laches defense – during a period when the
accused product or service did not exist. Moreover, Defendants' Answering Brief conceded that
the relevant time period for purposes of laches with respect to the MS-Based mode is 2006-2009.
(D.I. 518 at 2)

of Plaintiff's delay. *See Aukerman*, 960 F.2d at 1032.  Defendants contend that, had this lawsuit

been filed in 2006, they would have designed around the claims. (Tr. at 152)  Instead, during the

three-year period in which Plaintiff delayed bringing its case, Defendants made substantial

investments into the market.  *(Id.)*

Defendants have failed to adduce sufficient evidence from which a reasonable

factfinder could find prejudice of a kind necessary for Defendants to prevail on their affirmative

defense of laches. It is undisputed that Defendants knew of the '450 patent as early as 2006,

when Plaintiff warned them of a potential lawsuit. (D.I. 498 at 6)  Defendants could have

redesigned their products at that time, rather than risk a potential infringement lawsuit sometime

after the reexamination. Instead, Defendants knowingly and voluntarily chose to proceed with

their products.

Accordingly, the Court will grant Plaintiff's motion for summary judgment of no laches

with respect to the MS-Based mode of operation.

### B.    Patent Misuse

Plaintiff also seeks summary judgment with respect to Defendants' patent misuse

defense. (D.I. 498 at 8-9)  Plaintiff contends that Defendants have not provided any evidence to

support a finding of patent misuse. *(Id.)*  Defendants respond that their patent misuse defense is

directly intertwined with their allegations of inequitable conduct, and inequitable conduct has

been bifurcated. (D.I. 518 at 3)  Defendants request that the Court deny Plaintiff's motion

without prejudice and afford Defendants an opportunity to take discovery on patent misuse along

with inequitable conduct, following the forthcoming trial. *(Id.)*

The Court will grant Defendants' request. Hence, the Court will deny Plaintiff's

23

motion without prejudice to Plaintiff's ability to renew it after Defendants are provided an

opportunity to take discovery on patent misuse and inequitable conduct.

## VII. THE *DAUBERT* MOTIONS

For the reasons stated below, the Court will deny all three of the parties' *Daubert*

motions.

### A. The *Daubert* Standard

Federal Rule of Evidence 702 requires that expert testimony be: (1) based upon

sufficient facts or data; (2) the product of reliable principles and methods; and (3) the reliable

application of those principles and methods to the facts of the case. "Where there is a logical

basis for an expert's opinion testimony, the credibility and weight of that testimony is to be

determined by the jury, not the trial judge." *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134,

1138-39 (3d Cir. 1983). Under *Daubert v. Merrell Dow Pharms., Inc.*, "a court should consider

(1) whether a theory or technique can be (and has been) tested; (2) whether the theory or

technique has been subjected to peer review and publication; (3) the known or potential rate of

error; and (4) whether it is generally accepted in the scientific community." 509 U.S. 579, 593-

94 (1993) (internal quotation marks omitted). If an expert's testimony is permitted at trial, its

weight and credibility may be challenged through "[v]igorous cross examination, presentation of

contrary evidence, and careful instruction on the burden of proof." *Id.* at 596.

### B. Defendants' *Daubert* Motion to Exclude the
### Testimony of Plaintiff's Commercial Success Expert

Plaintiff seeks to introduce evidence of commercial success through its proposed

expert, Dr. Kerr, as part of its rebuttal to Defendants' contention that the '450 patent is invalid

24

due to obviousness.[8]  Defendants seek to exclude Dr. Kerr's testimony.  (D.I. 484)

The commercial success of a product embodying a patented invention is a secondary consideration that can be used to rebut an allegation that the invention was obvious.  *See Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997) ("In *Graham* the Supreme Court explained that the public and commercial response to an invention is a factor to be considered in determining obviousness, and is entitled to fair weight.") (citing *Graham v. John Deere Co.*, 383 U.S. 1, 35-36 (1966)).  To establish non-obviousness based on an invention's commercial success, a patentee must offer evidence showing a nexus between the product's commercial success and the claims of the patent.  *See Tokai Corp. v. Easton Enters.*, 632 F.3d 1358, 1369 (Fed. Cir. 2011) ("A nexus must exist between the commercial success and the claimed invention.").  Whether commercial success exists is a question of fact.  *See Graham*, 383 U.S. at 17.

Defendants present two arguments in support of their motion.  First, Defendants argue that Dr. Kerr has not established a sufficient nexus between the success of the accused products and the claimed invention.[9]  (D.I. 485 at 7-8; Tr. at 129-30)  According to Defendants, the accused products embody many other inventions (e.g., the ability to make calls, send text messages, play music, connect to the internet, etc.), and these other inventions are the reason for their products' commercial success.  (D.I. 485 at 8; Tr. at 130)  Second, Defendants contend that Dr. Kerr has not undertaken the requisite claim-by-claim analysis.  (D.I. 485 at 12)

---

[8]Dr. Kerr's analysis is not being presented for damages purposes, as the issue of damages has been bifurcated.

[9]Dr. Kerr's commercial success conclusion is based on Defendants' sales of the accused products.  (D.I. 511 at 4)

In response, Plaintiff contends that Defendants are attempting to impose a burden beyond that required by the law. (D.I. 511 at 1)  Plaintiff explains that, in 2006, the industry moved away from older modes of operation (MS-Assist) to the current "MS-Based" mode, which is the mode now accused of infringement. (Tr. at 139-40)  According to Plaintiff, Dr. Kerr's report details the reasons for this industry-wide shift, as well as other evidence necessary to establish the requisite nexus.  Plaintiff also argues that, as part of its *prima facie* case, it is not required to rebut the possibility that the sales of the accused products are attributable to other features. *See Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392-93 (Fed. Cir. 1988) ("A requirement for proof of the negative of all imaginable contributing factors would be unfairly burdensome, and contrary to the ordinary rules of evidence.").  With respect to a claim-by-claim analysis, Plaintiff contends that Dr. Kerr has properly relied on the conclusions reached by Plaintiff's technical expert. (D.I. 511 at 7)

The Court concludes Defendants' challenges to Dr. Kerr's analysis present issues of weight and credibility, to be determined by the fact finder, rather than issues of admissibility.  At trial, Defendants can challenge Dr. Kerr's opinions through cross-examination and the presentation of contrary evidence. *See Daubert*, 509 U.S. at 596.  The Court is not persuaded that it should exclude Dr. Kerr's testimony.

## C.   Plaintiff's *Daubert* Motion to Preclude the Testimony of Defendants' Proposed Commercial Success Expert

Plaintiff moves to exclude the testimony of Defendants' rebuttal commercial success expert, Dr. Leonard. (D.I. 482)  Plaintiff contends that Dr. Leonard's report applies the wrong standard for commercial success, one that is significantly higher than required by case law. (D.I.

482 at 5; Tr. at 142) Plaintiff further contends that Dr. Leonard did not undertake an independent analysis of any data, so his opinion adds little value. (D.I. 482 at 7)

Defendants respond that Dr. Leonard's testimony is entirely appropriate for a rebuttal expert. Defendants claim that Dr. Leonard undertook an analysis of economic principles and applied those principles to the facts of the case. (D.I. 519 at 4-5) According to Defendants, it was not necessary for Dr. Leonard independently to confirm the numbers provided in Dr. Kerr's report. (Tr. at 135-36)

The Court concludes that the parties' disputes go to the weight of the evidence, which is a matter for the jury. Plaintiff will be free to challenge Dr. Leonard's opinion through cross-examination and presentation of contrary evidence. The Court will not exclude Dr. Leonard's testimony.

### D. Plaintiff's *Daubert* Motion to Preclude the Testimony of Defendants' Proposed Technical Expert

Plaintiff also seeks to preclude the testimony of Defendants' technical expert, Dr. Pratt. (D.I. 493) The focus of Plaintiff's motion is Dr. Pratt's analysis of two "means-plus-function" terms, which the Court has construed.[10] (D.I. 454) According to Plaintiff, Dr. Pratt applied different claim constructions for purposes of infringement and validity. (D.I. 494 at 2) Specifically, for infringement purposes, Dr. Pratt construed the two terms to require a specific algorithm, while, for validity purposes, Dr. Pratt applied the Court's claim construction. In

---

[10]The means-plus-function terms at issue in Plaintiff's motion are: (1) "means at said mobile radio station for processing said Satellite Data Message block from said earth-based source of satellite position data to enable said mobile radio station to rapidly locate and access position information from said earth orbiting GPS satellites;" and (2) "a controller means connecting said satellite data message block to said mobile GPS receiver."

27

Plaintiff's view, this discrepancy renders Dr. Pratt's testimony unreliable, requiring exclusion. (*Id.* at 7)

In response, Defendants explain that it is Dr. Pratt's opinion that each claim containing the disputed means-plus-function terms is indefinite because there is no corresponding algorithm disclosed in the specification. (D.I. 520 at 9; Tr. at 124-25) However, should the Court find that no specific algorithm is required, Dr. Pratt further believes that the claims are still invalid in view of the prior art identified in his report. (Tr. at 124-25) In other words, Defendants offer Dr. Pratt's analysis of prior art as an alternative theory of invalidity. With respect to infringement, Defendants concede that Dr. Pratt's theory is limited to his findings on indefiniteness – Dr. Pratt did not compare the accused devices to the claims as construed by the Court. (D.I. 520 at 9; Tr. at 125-26)

The Court finds nothing improper in Defendants' approach. During trial, both parties will present expert testimony regarding the algorithm (or lack thereof) disclosed in the '450 patent specification. Dr. Pratt's testimony – like that of all experts – will be limited to that which has been previously disclosed in his expert report, pursuant to Federal Rule of Civil Procedure 26. The Court will not exclude Dr. Pratt's testimony as Plaintiff requests.

## VIII.    CONCLUSION

An Order consistent with this Memorandum Opinion will be entered.

28